## THE PEOPLE, *ex rel.* MULFORD *et al. vs.* TURNER, Judge of the Eighth Judicial District.

This court is strictly a court of appellate jurisdiction; but it may exercise its appellate jurisdiction by means of the process of *mandamus.* So also, it *seems,* by means of the writs of *habeas corpus, certiorari, supersedeas, prohibition,* &c.

The court will not undertake, in the first instance, to supervise, direct, or control the acts or omissions of a mere ministerial officer; but where the effect of the application is to bring under review the decision of a district court, the appellate jurisdiction given by the constitution attaches, and may be exercised by means of the writ of *mandamus.*

Striking an attorney's name from the rolls is not to be regarded in the light of a punishment as for contempt, but rather as the exercise of a power inherent in every court which has authority to admit attorneys, of expelling them from the bar when guilty of misconduct; but where an attorney is proceeded against for this purpose, he is entitled to have notice of the charges against him, and an opportunity to make his defence.

The writ of *mandamus* is a proper remedy to compel the district court to restore an attorney whose name has been stricken from the rolls by the order of such court.

Where notice of the motion for a *mandamus,* and a copy of the papers on which the motion is founded, have been duly served on the district judge, *this* court may, in its discretion, issue either an alternative, or a peremptory writ, in the first instance.

Where an order had been made by the district court of the eighth judicial district, expelling certain attorneys from the bar, on the ground that they had set at defiance the authority of the court, and had vilified and denounced its proceedings, but no notice had been given of the charges against them, and no opportunity afforded to make their defence; *Held,* that a writ should issue commanding the district court to vacate the order, and restore the parties.

THIS was an application for a writ of *mandamus* to the district judge of the eighth judicial district, to command him to vacate an order striking the names of the relators from the roll of the court as attorneys. The facts are stated in the opinion of the court.

*Stephen J. Field*, on the part of the relators.

*By the Court*, BENNETT, J. Application for a writ of *mandamus*. At a term of the district court of the eighth judicial district, held in and for the county of Yuba, on the tenth day of June last, the following order was made:—" Whereas Messrs. " Field, Goodwin, and Mulford, having set at defiance the au- " thority of this court, and having vilified the court, and de- " nounced its proceedings, the said Field, Goodwin, and Mul- " ford are hereby, by order of the court, expelled from the bar " of the same."

An application is now made for a writ of *mandamus* to require the court to vacate the above order, and reinstate the applicants. Copies of the papers upon which the motion is founded, together with notice of the motion, have been duly served upon the judge of the eighth judicial district.

Two questions are presented by this application: First, Has this court the power to issue a writ of *mandamus* to the district court? and, secondly, Whether, conceding the existence of the power, the case presented is a proper one for its exercise?

First, as to the power. The seventh section of the act organizing this court, declares that " the court, and each of the jus- " tices thereof, shall have power to issue writs of *habeas corpus*, " of *mandamus*, of *injunction*, *certiorari*, *supersedeas*, and such " other writs and process known to the law, as may be neces- " sary in the exercise of their jurisdiction." This section containing an express delegation of power to issue the writ of *mandamus*, there can be no question that, so far as statutory authority is concerned, the power resides in the court, to issue such writs in all cases in which they may appear to form the appropriate remedy. The only doubt which can be entertained upon

the subject, arises under the constitution which creates the court, and from which all its powers must be derived.

The first section of article 6 of the constitution vests the judicial power of the state in the supreme court, in district courts, in county courts, in justices of the peace, and in such municipal and other inferior courts as the legislature may deem necessary. Section 4 of the same article is in the following words :—" The " supreme court shall have appellate jurisdiction in all cases " where the matter in dispute exceeds two hundred dollars, " when the legality of any tax, toll, or impost, or municipal " fine is in question, and in all criminal cases amounting to fe- " lony or questions of law alone. And the said court, and each " of the justices thereof, as well as all district and county judges, " shall have power to issue writs of *habeas corpus* at the in- " stance of any person held in actual custody. They shall also " have power to issue all other writs and process necessary to " the exercise of their appellate jurisdiction, and shall be con- " servators of the peace throughout the state." The subsequent sections of the same article confer upon the district courts and the county courts " original jurisdiction," in law and equity, in all civil cases, and in all criminal cases not otherwise provided for. From the section of the constitution above quoted, in connection with the context, it appears entirely clear, that, with the single exception of proceedings upon writs of *habeas corpus*, this court has no original jurisdiction, and that the legislature can confer upon it none. It is strictly a revisory tribunal : its jurisdiction is, with the exception above-mentioned, exclusively appellate ; and in the exercise of that appellate jurisdiction, and of that alone, can it issue such writs and process as may be necessary to render such jurisdiction effectual.

What, then, is the extent of that appellate jurisdiction ? In the determination of this question we are fortunate in being furnished with a sure guide by the decisions of the highest tribunal of our country in their interpretation of the constitution of the United States. The judicial power of the United States is vested, by the constitution, in one supreme court, and in such inferior courts as Congress may from time to time ordain and establish ;

and it extends to all cases, in law and equity, arising under the constitution, treaties, and laws of the United States, to all cases affecting ambassadors, other public ministers and consuls, and to a variety of other cases particularly enumerated. It is then declared, by the second section of the third article of the constitution of the United States, that " in all cases affecting ambas- " sadors, other public ministers and consuls, and those in which " a state shall be a party, the supreme court shall have original " jurisdiction. In all the other cases before mentioned, the su- " preme court shall have appellate jurisdiction, both as to law " and fact, with such exceptions, and under such regulations as " Congress shall make." It is thus perceived that, by the constitution of the United States, the supreme court is vested, in some cases, with original, in others, with appellate jurisdiction ; as, by the constitution of California, this court has, in one class of cases, original, and in other cases, appellate jurisdiction. The distinction between these different species of jurisdiction, taken in the one instrument, is substantially the same as the like distinction made by the other ; the language used to express this distinction is strongly analogous in both ; and, thus, the judicial interpretation of this portion of the constitution of the United States may be safely relied upon in giving construction to the constitution of our own state.

The leading case in which the section above referred to, of the constitution of the United States, came up before the supreme court, is that of *Marbury* v. *Madison*, (1 *Cranch*, 137.) It was there declared to be an essential criterion of appellate jurisdiction, that it revises proceedings already instituted, and does not institute them ; and that to enable the court to issue a *mandamus*, it must be shown to be an exercise of appellate jurisdiction, or be necessary to enable the court to exercise such jurisdiction ; and it was held, in pursuance of these principles, that though the court might, in exercising its appellate jurisdiction, issue a *mandamus* to other courts, yet to issue such writ to an officer for the delivery of a paper, such as a commission, would be, in effect, the same as to sustain an original action for that paper, and therefore belonged not to appellate, but to original

The People *v.* Turner.

jurisdiction ; and that, consequently, the authority given by the 13th section of the Judiciary Act of 1789, to issue writs of *mandamus* to public officers, was not warranted by the constitution. In *M'Cluny* v. *Silliman*, (2 *Wheat.* 369,) the application for a *mandamus* was refused on the authority of *Marbury* v. *Madison*, and the doctrine of the latter case has been adhered to and recognized in subsequent adjudications as the settled law of the court. But, whilst *Marbury* v. *Madison*, and its kindred cases, define the limits beyond which the court cannot go, there are, on the other side, several decisions which point out the extent of the powers of the court in the exercise of its proper appellate jurisdiction.

Thus in Hamilton's case, (3 *Dall.* 17,) in Burford's case, (3 *Cranch*, 448,) and in Bollman & Swartwout's case, (4 *Cranch*, 75,) the power to issue writs of *habeas corpus* was declared to belong to the court. Chief Justice Marshall in delivering the opinion of the court in the case last cited, says : " In the *man-* " *damus* case, *Marbury* v. *Madison*, it was decided that this " court would not exercise original jurisdiction, except so far as " that jurisdiction was given by the constitution. But so far as " that case has distinguished between original and appellate juris- " diction, that which the court is now asked to exercise is clearly " appellate. It is the revision of the decision of an inferior court, " by which a citizen has been committed to jail." And again, in the same case, he remarks : " The decision that the indivi- " dual shall be imprisoned must always precede the application " for a writ of *habeas corpus*, and this writ must always be for " the purpose of revising that decision, and therefore appellate " in its nature." The same court determined in *ex parte* Crane, (5 *Pet.* 189,) that it had power to issue a *mandamus* to a circuit court, commanding the court to sign a bill of exceptions in a case tried there ; and in *ex parte* Bradstreet, (7 *Pet.* 634,) the court below was required, by a like writ, to make up a record and give judgment thereon. In Crane's case the chief justice says, that " a *mandamus* to an officer is held to be the exercise of " original jurisdiction ; but a *mandamus* to an inferior court of " the United States, is in the nature of appellate jurisdiction."

The conclusion deducible from the above cases appears to be, that the court will not undertake, in the first instance, to supervise, direct, or control the acts or omissions of a mere ministerial officer; but that, when the object and effect of an application to it is to bring under review the decisions of an inferior court, or to direct its action, or control or annul its excesses, the appellate jurisdiction given by the constitution attaches; and that the court may exercise that appellate jurisdiction, in some cases by means of the writ of *habeas corpus*, and in others by means of the writ of *mandamus.*

The authorities above cited, by which the appellate jurisdiction of the supreme court of the United States is determined, though not of binding force upon us, are yet strictly in point to show the extent of the like jurisdiction, which this court may, if compatible with the judicial organization of the state, legitimately assume; and which it ought to assume, if it would be a result of the denial of the power, to leave the judicial system imperfect, or destroy its harmony, or impair the adaptation of its various parts. That this result would follow a denial of the existence of the power, appears to be an inference fairly deducible from the very nature of the writ of *mandamus,* which necessarily implies the idea of a superior and an inferior tribunal.

This writ, says *Blackstone,* (3 *Comm.* 110,) " issues to the " judges of any inferior court, commanding them to do justice " according to the powers of their office, whenever the same is " delayed. For it is the peculiar business of the court of king's " bench to superintend all other inferior tribunals, and therein " to enforce the due exercise of those judicial or ministerial " powers with which the crown or legislature have invested " them; and this, not only by restraining their excesses, but " also by quickening their negligence, and obviating their denial " of justice." A *mandamus,* therefore, implies the power to command, and the duty of obedience—a relation, incompatible with the equality of the tribunal from which the writ issues, and the tribunal to which it is directed. But the several district courts of the state have all the same jurisdiction and powers. They all stand on the same level. There is neither

The People *v.* Turner.

superiority nor inferiority in their relations to each other. There is neither the right to command or prohibit, nor the duty to obey. And it would be inconsistent with the relations which they hold towards each other, that one should attempt to supervise, or direct, or restrain the action of another by the writ of *mandamus*, or by the writ of prohibition. If, therefore, this court does not possess the power to issue the writ of *mandamus* to a district court, no tribunal exists, or can be created by the legislature, by which such power may be exercised; and the existence of it in this court is, consequently, not only compatible with the organization of the judiciary of the state, but without it the system would be imperfect beyond any remedy except a change in the constitution.

The question, which we have thus briefly considered, was not discussed at the bar, and we have not had the benefit of the learning of counsel, but it is necessary that it should be settled; and we have determined that the power does exist in this court to issue writs of *mandamus* to the district courts.

The power existing, the next point for consideration is whether the papers before us present a proper case for the exercise of that power. This involves two questions: first, as to the validity of the order; and secondly, as to the appropriateness of the remedy by *mandamus*.

First: Was the order properly made, and a valid determination of the court, which ought not to be disturbed? It does not appear that it was made as a punishment for contempt, and if it were intended as such it could not be supported. The 13th section of the act organizing the district courts prescribes fine and imprisonment as a punishment for contempt, and this express provision must be taken as exclusive of all other modes of punishment. Viewed as an adjudication for a contempt, the order is invalid, for inflicting a punishment different from that warranted by the statute, the same as it would have been, had it imposed a heavier fine or sentenced to a longer imprisonment than the statute authorizes. Besides, it is not usual for a court to interpose by a proceeding for contempt against an attorney for any act independent of his profession; and it ap-

pears both from the order itself and from the affidavits, that the offences charged against these parties were not connected with their professional employment as attorneys. The order should, therefore, be regarded as the exercise of a power inherent in every court, which has the authority to admit attorneys to practice, of striking their names from the rolls, or, as the order expresses it, of expelling them from the bar, whenever they are guilty of such conduct, either in or out of their profession, as shows them to be unfit persons to practice it. But where an attorney is proceeded against with this object, he is entitled to have notice of the charges against him, and an opportunity to make his defence. This is not only the dictate of natural justice, and the uniform practice in such cases, but it has been carried into an express adjudication in *ex parte Heyfron.* (7 *How. Miss. Rep.* 127.) In the case at bar, no notice of the charges upon which the order was made was given; no opportunity for explanation, apology,* or defence was afforded; the judgment of the court was *ex parte,* and condemned the defendants without a hearing. It is barely necessary to add, that a judgment thus rendered, partaking so strongly of the nature of a criminal proceeding, and so serious in its consequences, cannot be supported.

Secondly: Is the proceeding by *mandamus* the proper means by which the error may be rectified? According to the passage above cited from *Blackstone's Commentaries,* this writ is used as an instrument to restrain the excesses of inferior tribunals, and obviate their denial of justice; and the commentator, in enumerating the cases in which it may be issued, says, (3 *Comm.* 110,) that " It lies to compel the admission or *restoration* of the " party applying to any office or franchise of a public nature, " whether spiritual or temporal; to academical degrees; to the " use of a meeting house, &c.; for the production, inspection, or " delivery of public books and papers; for the surrender of the " regalia of a corporation; to oblige bodies corporate to affix " their common seal; to compel the holding of a court; and for " an infinite number of other purposes which it is impossible to " recite minutely." From the general nature and character of

The People *v*. Turner.

the writ, and the specification of the cases in which it lies, as thus laid down, it would seem not to be extending it beyond its appropriate office to apply it in the present case. But it will not lie, if the applicants have another specific and adequate legal remedy, nor if the effect of it would be to interfere with the exercise of the discretionary powers of the court. That there is no other specific and adequate legal remedy is too apparent to admit of controversy, or to require any farther consideration here. Would the issuing of it interfere with the discretionary power of the court? We think not. An attorney, by his admission as such, acquires rights, of which he cannot be deprived, at the *discretion* of a court, any more than a physician of the practice of his profession, a mechanic of the exercise of his trade, or a merchant of the pursuit of his commercial avocations. It is true, that, being officers of the court, attorneys are in many respects subject to the orders of the court, but these orders must be the result of sound and legal, and not of arbitrary and uncontrolled discretion. A *mandamus* to the district court to vacate this order would not be an interference with the discretionary powers of that court.

A similar case has been before the supreme court of New York and decided. In the *People* v. *The Judges of Delaware Co.* (1 *Johns. Cas.* 181,) a *mandamus* was issued to the court of common pleas, commanding them to restore an attorney who had been removed by them. A peremptory *mandamus* will, therefore, issue in this case to vacate the order in question, and to reinstate the applicants as attorneys and members of the bar of the eighth judicial district. An alternative *mandamus*, in the first instance, we do not deem necessary. Notice of this application having been given, and copies of the papers served, the court may award either an alternative or peremptory *mandamus*, according to the nature and exigency of the case; and in both these respects we think it proper that a peremptory writ should go in the first instance.

Ordered accordingly.