[No. 10,652.—In Bank.]

## EX PARTE WILLIAM HOLLIS.

JURISDICTION—HABEAS CORPUS—CRIMINAL CASE.—The question of the authority of the Court that adjudges a person guilty of a criminal offense, is one which is always within the limits prescribed to the judicial inquiries of a Court issuing a writ of *habeas corpus.*

ID.—ID.—ID.—DEFINITION — CONTEMPT — CERTIORARI—APPEAL.—To adjudge a party guilty of a contempt of Court, for which he is fined and imprisoned, is to adjudge him guilty of a criminal offense. The imposition of the fine is a judgment in a criminal case; and the jurisdiction of the Court to punish and imprison for such an offense is reviewable by this Court on *habeas corpus,* on *certiorari,* or on appeal.

Id.—Id.—Contempt—Insolvency Proceedings—Receiver—Order to Deliver Property.—A Superior Court has no authority to adjudge a party guilty of contempt, and to fine and imprison him for not turning over to a receiver in insolvency money and effects held by him adversely to the insolvent debtor. Such a power can not be exercised over a party, unless he has collected and holds the money and effects as trustee for the estate of the insolvent debtor, and the Court has jurisdiction over him as an officer of the Court, or as a party to the proceedings.

Id.—Id.—Id.—Id.—Id.—Id.—Parties Corporation.—In an insolvency proceeding against a corporation, neither the president, the secretary, the individual directors, nor the stockholders, are parties; nor does the president become a party by verifying the pleadings.

Id.—Id.—Id.—Id.—Id.—Id.—In an insolvency proceeding against a corporation of which the petitioner was president, he was adjudged guilty of contempt for refusing to turn over to the receiver certain money and goods claimed by him adversely to the corporation. The petitioner deraigned title under assignments and transfer made by the corporation prior to the commencement of the insolvency proceedings, and it was claimed and in effect found by the Court that these assignments were in fraud of creditors.

Held: The court had no control or jurisdiction over the petitioner, or over his property, and could not by a mere order to show cause why he should not be punished for contempt, make him as an adverse claimant a party to the proceedings, and adjudge his right to the property in a summary way.

Id.—Id.—Id.—Id.—Id.—Id.—Proceedings for contempt are not the appropriate proceedings for the trial of issue of title; but such issue should be tried in an appropriate action, in which the verdict of a jury or findings of the Court may be had.

Id.—Id.—Id.—Id.—Id.—Id.—Practice.—Instead of proceeding as it did, the Court should have made an order directing the receiver, or assignee in insolvency, to institute suit against the petitioner to set aside the conveyances and transfers under which he claimed the property adversely to the insolvent debtor.

Application for discharge upon writ of *habeas corpus.*

No briefs on file.

McKee, J.:

This is an application on *habeas corpus* to be discharged from imprisonment under a commitment issued upon a judgment, in proceedings for contempt, rendered by the Superior Court of the city and county of San Francisco, against the petitioner.

Of the office and effect of a writ of *habeas corpus,* under our system of jurisprudence, there can not be, at this day, much question. It has been, indeed, contended that after

judgment in a criminal case of a Court of competent jurisdiction a prisoner can not be discharged on *habeas corpus*, because the judgment is conclusive. Of course, where a Court has jurisdiction of the subject-matter and the parties, its judgment is not revisable on such process. Being conclusive, Courts will not go behind it to ascertain whether any errors of law were committed in the proceedings in which it was rendered. But the judgment is not conclusive upon the question of the authority of the Court that rendered it. That, as well as any other matter which would render the proceedings void, is always open to inquiry. It were a legal absurdity to say that a judgment of conviction, valid in form, precluded all inquiry into authority to render it.

In *Ex parte Kearney*, 55 Cal. 212, this Court went behind the judgment of the Police Court of San Francisco, to determine whether the act of which the petitioner in that case was convicted, was a criminal offense known to the law, and having reached the conclusion that it was not, we held the judgment of conviction absolutely void. As was said in that case: " Whenever a Court undertakes to imprison for an offense to which no criminality is attached, it acts beyond its jurisdiction." Nearly a hundred years ago the author of Bacon's Abridgment thus expressed the same doctrine: "If the commitment be against law, as being made by one who had no jurisdiction of the case, or for a matter for which by law no man ought to be punished, the courts are to discharge." (4 Bac. Abr., Hab. Corp. 585.) So in *People v. Liscomb*, 60 N. Y. 559, the Supreme Court, while holding part of a judgment of conviction to be conclusive, decided that another part of the same judgment was in excess of the jurisdiction of the Court that rendered it, and therefore void. " Jurisdiction," says the Court, " of the person of the prisoner and of the subject-matter are not alone conclusive, but the jurisdiction of the Court to render a particular judgment is a proper subject of inquiry; and while the Court can not, upon a return to the writ, go behind the judgment and inquire into alleged error and irregularity preceding it, the question is presented and must be determined, whether upon the whole record the judgment was warranted by law, and was within the jurisdiction of the Court." And in *Ex parte Siebold*, 100 U. S. 371,

where several persons had been convicted and sentenced by the Circuit Court of the United States for the District of Maryland, for an alleged criminal offense in violation of certain acts of Congress, the Supreme Court of the United States went behind the judgment of conviction to determine the validity of the acts. "The validity of the judgment," say the Court, "is assailed on the ground that the acts of Congress, under which the indictments were found, are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and can not be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law, that the judgment of an inferior Court affecting it is not deemed so conclusive but that the question of the Court's authority to try and imprison the party may be reviewed on *habeas corpus.*"

The question of the authority of the Court that adjudges a person guilty of a criminal offense is, therefore, one which is always within the limits prescribed to the judicial inquiries of a Court issuing a *writ of habeas corpus*, and the judgment may be reviewed. To adjudge a party guilty of contempt of Court, for which he is fined and imprisoned, is to adjudge him guilty of a specific criminal offense. The imposition of the fine is a judgment in a criminal case. (*Ex parte Crittenden,* 7 P. C. L. J. 483.) And the jurisdiction of the Court to punish and imprison for such an offense is reviewable by this Court, on *habeas corpus* (*People* v. *Turner,* 1 Cal. 149; *Ex parte Rowe,* 7 Id. 181), or on *certiorari* (*Ex parte Cohen,* 6 id. 319; *Batchelder* v. *Moore,* 42 id. 413; *Ex parte Smith,* 53 id. 204), and on appeal (*People* v. *O'Neil,* 47 id. 110).

In the case in hand, it appears, by the record of the proceedings, that certain creditors of a corporation known as the Real Estate Associates, had filed a petition in the Superior Court to have it adjudged an involuntary insolvent under the provisions of an act of the Legislature, entitled "An act for the relief of insolvent debtors, for the protection of cred-

itors, and for the punishment of fraudulent debtors," approved April 16, 1880. Of this corporation the petitioner had been President, acting manager, and a Director. Upon filing the petition the Court made an order requiring the corporation to show cause on a day certain why it should not be adjudged an insolvent debtor, pursuant to section 9 of the statute; and, at the same time, appointed a receiver to take charge of its estate until the appointment of an assignee. (Sec. 63.) Of the order appointing the receiver, a copy was served on the petitioner, but no service was made upon him of the order to show cause, although when the corporation filed its answer to the petition, the petitioner herein verified the answer, and after he had received notice of the appointment of the receiver, he, in his own behalf, moved the Court to set aside the appointment. The motion was denied, and afterwards the receiver made upon him the following written demand:

"San Francisco, April 27, 1881.

" *William Hollis, Esq.*—Sir: As the receiver of the assets of the Real Estate Associates, I demand of you the money and effects by you collected from the following persons since the date of my appointment, claimed by me as property of the insolvent:

| WHEN COLLECTED. | FROM WHOM. | AMOUNT. |
|---|---|---|
| March 2, 1881 | Francis Conley | $12 |
| March 8, 1881 | Patrick Broderick | 13 |
| March 8, 1881 | Bignotti | 40 |
| March —, 1881 | Emerson | 80 |
| March 26, 1881 | Patrick Ahern | 28 |
| April 7, 1881 | Bignotti | 40 |
| —— ——, ——. | Carrick | 25 |

And such other property and effects as you may have in your possession or under your control, being assets of said insolvent, the Real Estate Associates. Respectfully,   Wm. Hale,

Receiver of the Real Estate Associates, a corporation in insolvency."

Compliance with this demand was refused by the petitioner; and, upon affidavit made by the receiver of the demand and refusal, the Court ordered the petitioner to show cause, on May 5, 1881, why he should not be adjudged guilty of con-

tempt, and why he should not pay over to the receiver all the moneys and effects in his possession and under his control belonging to the insolvent debtor. The matter was heard May 7, 1881. The petitioner denied that he had any money or effects belonging to the corporation, but admitted that he had collected, by himself and his agents, certain rents, specified in the demand made upon him by the receiver, to the amount of two hundred and eighty dollars, from tenants in possession of real property, which belonged to himself, and to which he claimed title by a deed executed and delivered to him by the Real Estate Associates, on the second day of May, 1880. And under that title the petitioner had collected the rents from his tenants, and used them as his own property.

It also appeared, that one Mary Polack had, in 1879, commenced an attachment suit against the Real Estate Associates, and had levied the writ of attachment, which had been issued in the case, upon certain real property then belonging to the corporation. To release this attachment, a bond had been executed by Hanson and Kenfield, as sureties for the corporation, and to indemnify them for going upon the bond, the corporation, through Hollis, the petitioner, deposited with them the sum of two thousand five hundred dollars of the funds of the corporation, and, with their lawyers, certain notes and mortgages belonging to the corporation.

After the attachment had been released by the execution and filing of this bond, the Real Estate Associates, it seems, sold and conveyed the attached property to a corporation organized in 1879, under the laws of the State, known as the Real Estate and Building Associates. Of this last-named corporation, Hollis was not an executive officer or Director; but he appears to have manipulated the transactions of both corporations, with the knowledge and connivance of the officers and Directors of both. The notes and mortgages of the insolvent corporation, which had been deposited with the lawyers of Hanson and Kenfield as indemnity, had been taken in his name, and while they remained in pledge, he caused them to be sold and assigned to the Real Estate and Building Associates. These transactions, *bona fide* or fraudulent, took place in 1879, before the passage of the insolvent law, and under them, the Real Estate and Building Associates

claimed to be the owner of the property, subject to the pledge of it in favor of Hanson and Kenfield. The insolvent corporation was, therefore, not the owner, if it had transferred them.

It was in that condition of the affair that Hollis, at the instance of the bondsmen, settled the attachment suit for the insolvent corporation for the sum of two thousand and fifty dollars. The bondsmen delivered the money deposited with them to their lawyers, who were acting as the lawyers of the corporation, to be applied to the satisfaction of the attachment suit. The lawyers gave a check to the plaintiff's attorney for the money, upon receipt of which the attachment suit was dismissed, the bond of Hanson and Kenfield was canceled, and the balance of the deposits was delivered by the lawyers to Hollis, who, afterwards, under a resolution passed by the Real Estate and Building Associates, sold and transferred them and applied the proceeds of sale according to the directions of the Real Estate and Building Associates.

These transactions, about which there was no conflict of evidence, were in themselves sufficient in form to pass the title to the property included in them, from the Real Estate Associates to Hollis and to the Real Estate and Building Associates. At the time of filing the petition in insolvency, the property did not apparently belong to the insolvent, and was not subject to the proceedings in insolvency, nor to the power of the Court over the insolvent. It was held and claimed adversely by Hollis and the Real Estate and Building Associates. But the Court found that "William Hollis had in willful disobedience and disregard of the orders and processes of this Court, collected the sum of two hundred and thirty-eight dollars, in rents from tenants occupying the property of said insolvent corporation since filing of said petition in insolvency against it and the appointment of said receiver. That since that date said Hollis has, in disregard of said proceedings in insolvency, and in open and willful disobedience of the orders and decrees of this Court, settled and compromised a lawsuit, and realized on assets belonging to said insolvent, the sum of one thousand nine hundred and fifty dollars, which several amounts, aggregating the sum of two thousand one hundred and eighty-eight dollars, he appro-

priated to his own use, and now has in his control and possession.

"1. From the foregoing facts the Court finds, as a conclusion of law, that William Hollis has, with knowledge of the pendency of the proceedings in said insolvency matter against said corporation, and with full knowledge of the orders and decrees of this Court made therein, willfully disobeyed the orders and decrees of this Court, and interfered with the processes of this Court, and interfered with its officers in the discharge of their duties, and interfered with the property belonging to said insolvent corporation; and in so doing is guilty of contempt of this Court, and should be fined therefor in the sum of two hundred and ninety-eight dollars, and stand committed and be imprisoned in the common county jail of the City and County of San Francisco, State of California, for the period one day for every two dollars of said fine not paid.

"2. That the said Hollis should deliver and pay over to said receiver the amounts of money so collected by him and appropriated to his own use, to wit, two thousand one hundred and eighty-eight dollars; and that he, the said William Hollis, should be committed and imprisoned in the common County Jail of the City and County of San Francisco, State of California, until the said sum of two thousand one hundred and eighty-eight dollars is so paid over.

"CHARLES HALSEY, Judge."

The question, therefore, arises whether a Superior Court has authority to adjudge a party guilty of contempt and to fine and imprison him, for not turning over to a receiver in insolvency moneys and effects, part of which he claims adversely to the insolvent debtor, and the other part is also claimed adversely by a corporation with which he is not connected as an executive officer or director. We think such a power can not be exercised over a party, unless he has collected and holds the money and effects as trustee for the estate of the insolvent debtor, and the Court has jurisdiction over him as an officer of the Court, or as a party to the proceedings. (*Ex parte Perkins*, 18 Cal. 64; *Ex parte Smith*, 53 id. 204; *Ex parte Cohn*, 55 id. 196.) It is not claimed that the Real Estate and Building Associates was an officer of

the Court, or a party to the proceedings in insolvency, nor was the petitioner. Verifying the answer of the insolvent debtor did not make him a party. Process against the corporation brought the corporation alone into Court; being in Court it verified and filed its pleadings according to law. It was the only party to the record. Neither the President, Secretary, the individual directors, nor stockholders were parties to the proceeding. (*Apperson* v. *The Mutual Benefit Life Insurance Co.*, 38 N. J. Law, 272.)

The petitioner, then, was not an officer of the Court, nor a party to the proceedings in insolvency. He claimed the property under title adverse to all the world. As an adverse claimant he was not before the Court. The Court had no control or jurisdiction over him, or over his property, and it could not, by a mere order to show cause why he should not be punished for contempt of Court, make him as an adverse claimant a party to the proceedings and adjudge his right to the property in a summary way. The title upon which his adverse claim was founded may be invalid. It may have been obtained by fraudulent and corrupt practices. But as between him and his grantor and all the world, except creditors and subsequent purchasers of the grantor, it was good until attainted and set aside; for it is a principle which underlies all institutions and forms of government, that no man can be deprived of his property, except in proceedings according to law, unless it be confiscated for the necessities or good of the public. If his title is claimed to be invalid or fraudulent and void, he is entitled to be heard according to the forms of law. Proceedings to punish him for contempt for not delivering it up, without a trial according to law, to another who claims it, are not the appropriate proceedings for the trial of issue of title. The issue as to such title should be tried in an appropriate action, in which the verdict of a jury or the findings of the Court may be had upon issues properly framed for the purpose of definitely determining the question of title. (*Larrabee* v. *Selby*, 52 Cal. 508.) The proceedings against the petitioner were in legal effect, analogous to proceedings supplementary to execution by a judgment creditor against a garnishee who claims the property in his possession or under his control. In such a case it has been held

that if the property was in the possession of the garnishee claiming title to it, "no matter how fraudulent the transfer, no order can be made to compel him to deliver the property, and, therefore, no questions can be put to the debtor or a witness, to discover or prove the fraud. * * * The remedy of the creditor is by direct action against the fraudulent assignee, where the good faith of the assignment is in issue." (*Town* v. *The S. Ins. Co.*, 4 Bosw. 683; *Hartman* v. *Olvera*, 51 Cal. 503; *Parker* v. *Page*, 38 id. 522.) His rights must be heard and determined by some antecedent or intermediate process or proceedings to which he is a party in which an order or judgment may be rendered against him which will be binding upon him, and which may be enforced by process of contempt if it is not obeyed. But until the rendition of such judgment or order he can not, by summary proceedings for contempt, be adjudged contumacious and fined and imprisoned for failing to turn over the property which he claims adversely to the insolvent, to an assignee or receiver. (*Sargent* v. *Cavis*, 36 Cal. 557, 558.) The same doctrine has been recognized in proceedings in bankruptcy under the bankrupt law of Congress.

*In re G. B. Holland, Jr.* (12 N. B. R. 403), certain creditors of the relator had filed their petition to have Holland, Jr., adjudged a bankrupt under the provisions of the Bankrupt Act. Before the petition was filed the bankrupt had transferred a stock of goods, wares, and merchandise to his father, G. B. Holland, Sr. The creditors charged that the transfer was fraudulent, and petitioned for a writ of seizure. Upon the issuance of the writ the Marshal seized and took the property from the possession of Holland, Sr. But the United States District Court annulled and vacated the warrant of seizure, and ordered the property to be restored to the possession of the claimant upon the grounds that he was no party to the proceedings in bankruptcy, and that the property appeared to have been purchased by and transferred to him before the proceedings were commenced. "The question," says the Court, "of the *bona fides* of the sale and transfer by Holland, Jr., to his father, and whether it was in fraud of the rights of the creditors, etc., is one which can only be raised by a proper judicial proceeding. Until this is

done, Holland, Sr., is entitled to the possession of the property. If Holland, Jr., is adjudicated a bankrupt, suit may be brought by his assignee to subject the property or its proceeds to the claim of creditors, and in such action Holland, Sr., must be defendant, with the right of being heard."

*In re Charles J. Marter* (12 N. B. R. 185), Marter had been adjudicated a bankrupt, after which, under the provisions of the Bankrupt Act, an injunction was issued prohibiting him and one Beckel from incumbering, disposing of, or in any manner interfering with, any part of the property of the bankrupt. After the service of the injunction, Beckel sold certain property, which he had received by assignment from the bankrupt before the adjudication in bankruptcy, to the wife of the bankrupt, who mortgaged it as security for the payment of a debt which she owed to one Litchenfield, and upon motion for an attachment against Beckel for contempt, he showed that he held the property adversely to the proceedings in bankruptcy, and claimed title to it as against the assignee in bankruptcy; the United States District Court held, upon the authority of *Smith* v. *Mason*, 14 Wall. 419, and of *Marshall* v. *Knox*, 16 id. 551, that the claimant was not subject to proceedings for contempt, and that the Court had no power to enforce a claim of that character by summary proceeding. "If," say the Court, "the assignment was valid, it transferred the title of the property to Beckel, and this sale of it was no violation of an injunction restraining him from disposing of the *bankrupt's* property. * * * We are asked then to determine summarily upon petition and affidavits, that this assignment was void, and passed no title to the property. * * * So far as this question is concerned, the case stands precisely as if an assignee had been appointed, and he had petitioned that Beckel *should pay the proceeds of the property to him or should turn over the property itself* in case he had not sold it. Clearly Beckel holds adversely to the proceedings in bankruptcy and to any title which the assignee hereinafter to be appointed may take."

The cases of *Bradley* v. *Farwell*, 1 Holmes, 433, and of *Nichols* v. *The Perry Patent Arms Co.*, 3 Stock. Ch. 126, referred to by the Court below in its opinion, serve to illustrate and sustain the same doctrine. One was a bill in

equity by assignees in bankruptcy of an insolvent corporation to set aside a transfer of its assets, made, before proceedings in bankruptcy, to a partnership of which one of the directors was a member, and to recover the property so transferred. The other was an application for the appointment of a receiver which was resisted by claimants of certain property under a transfer from an insolvent corporation. The Court overruled the objection to the appointment of a receiver upon the ground that the legality of the sales of the property in question made under the circumstances ought to be investigated, and that they could not be investigated unless a receiver was appointed.

Instead of proceeding by summary proceeding for contempt against the petitioner, the Court below should have made an order directing the receiver or assignee in insolvency to institute suit against the petitioner to set aside the conveyances and transfers under which he claimed the property adversely to the insolvent debtor, and to enjoin the tenants in possession of the property from paying rents to him. It had no power to order him to turn over property of his own, and to which he showed title, to a receiver, or to fine and imprison him for refusal.

The petitioner is discharged.

MORRISON, C. J., and SHARPSTEIN and McKINSTRY, JJ., concurred.