STEPHEN BALDWIN v. GEORGE S. HOSMER, CIRCUIT
JUDGE OF WAYNE COUNTY.

*Mutual benefit associations—Reserve fund—Receiver—Distribution
of assets—Comity—Estoppel—Contempt proceedings.*

| 101 | 119 |
| 101 | 436 |
| 101 | 119 |
| f116 | 271 |
| 116 | 272 |
| 117 | 24 |

The Supreme Sitting of the Order of the Iron Hall is a benefit
association organized under the laws of the state of Indiana,
and had local branches in the State of Michigan and in other
states, which were subject to the authority and control of the
main organization and its officers.   The benefit fund was
derived from assessments made from time to time by the
Supreme Sitting upon the holders of benefit certificates, out of
which benefits were paid in case of the sickness, disability, or
death of a member.   These assessments were made through
the local branches, and 80 per cent. of the same was sent to
the supreme cashier of the Supreme Sitting, and 20 per cent.
of the amount received by each local branch on each assess-
ment was set aside and retained as a reserve fund, which
fund was declared by the laws of the order to be the property
of the Supreme Sitting, and subject at all times to its control..
The corporation was adjudged insolvent by the Indiana court,.
and a receiver was appointed of its assets both within and
without that state, after which an ancillary receiver of its.
assets in the State of Michigan was appointed by the circuit.
court of Wayne county, in chancery, who, after duly qualify-
ing, demanded from the proper officers of one of said local
branches, located in the city of Detroit, all moneys and effects.
in their hands belonging to the Supreme Sitting.   Upon their
refusal to comply with said demand, contempt proceedings.
were instituted in said Wayne circuit court, on the hearing
of which the circuit judge refused to punish said officers for
contempt in refusing to comply with said demand, it appear-
ing on said hearing that garnishment proceedings were pend-
ing against said officers ancillary to a suit against said corpo-
ration.   And, in refusing an application for a *mandamus* to
compel the circuit judge to punish said officers for said alleged
contempt, it is held:
    *a*—That an examination of the various provisions of the
constitution and laws of the order convinces the Court that

the title to the reserve fund retained by the local branches is in the Supreme Sitting; that the 20 per cent. of the assessment retained by each local branch differs from the 80 per cent. transmitted to the Supreme Sitting, mainly in this, that the possession and supervision, subject to such laws, remained with the local branches; that the whole fund is for the protection of, and payment of benefits to, holders of benefit certificates; and that the reserve fund seems to be essentially a part of the benefit fund, although it may be in the nature of a safety fund to insure the payment of maturing certificates; citing *Buswell v. Supreme Sitting*, 161 Mass. 224; *Ware v. The Same*, 28 Atl. Rep. 1041.

*b*—That the local branches and their officers are a part of the order, and cannot, in this proceeding, question its due incorporation; citing *Bank v. Stone*, 38 Mich. 779; *Manufacturing Co. v. Stuart*, 46 Id. 482; Nibl. Mut. Ben. Soc. § 2.

*c*—That the Indiana receiver, and the petitioner as ancillary receiver in this State, not only represent the creditors of the corporation, but stand in its stead; that under the decree of the Indiana court, and of the circuit court of Wayne county in chancery, they are directed to gather in the corporate assets, and, unless some reason is shown why such order should not be carried out, the local branch in Detroit and its officers and members cannot refuse to turn over the assets in its and their hands to the ancillary receiver; that, when received by him, the Michigan court may order them transmitted to the Indiana receiver, but that such order should be made only when it is made certain to the court that the members in this State will share proportionately with the other members throughout the organization; that the fund is found in many different states, and comity requires that the Court should do all it can to insure, as far as possible, a speedy distribution of the whole property among those entitled to it, but that the court below must have some discretion in making said order so that the rights of the citizens of this State may be protected.

*d*—That an order for the payment of this fund to the receiver should not be made until the questions arising under the garnishment proceedings are determined; that the plaintiff in that case has a right to his day in court before he can be deprived of the fund, or before the local branch and its officers are bound to pay it over to the receiver; that he is not a party here, and his rights cannot be here litigated; that, if he obtained a valid lien on the fund, it was not dissolved by the filing of the bill and the appointment of a receiver, but may

be enforced; and that proceedings for contempt are not appropriate for the trial of the issues involved.[1]

*Mandamus.* Argued April 24, 1894. Denied June 16, 1894.

Relator applied for *mandamus* to compel the respondent to punish as for contempt certain officers of a Detroit branch of the Supreme Sitting of the Order of the Iron Hall in refusing to turn over to an ancillary receiver, appointed in this State, the assets in their hands belonging to said order. The facts are stated in the opinion.

*Carlos E. Warner,* for relator.

*Charles A. Kent,* for respondent.

LONG, J. This is an application for a writ of *mandamus* to compel the respondent, who is one of the judges of the circuit court for the county of Wayne, to punish as for contempt certain persons who are officers of a local branch of the Order of the Iron Hall.

The petition alleges substantially that the Supreme Sitting of the Order of the Iron Hall is a corporation organized at the city of Indianapolis, Ind., in the month of July, 1881, under and pursuant to the provisions of article 8, chap. 24, of the Revised Statutes of the State of Indiana; that, after its formation, it entered upon the business for which it was organized, and solicited memberships throughout the different states of the Union; that the business of the order was carried on by and through the instrumentalities of so-called "local" or "sisterhood" branches, which were responsible to the main organization,

---

[1] For somewhat conflicting action of the courts in respect to the recognition of the Indiana receiver of the Iron Hall Order, see the Massachusetts case of *Buswell v. Supreme Sitting,* 23 L. R. A. 846, and the Connecticut case of *Fawcett v. The Same,* 24 Id. 815.

and which, as declared by their constitutions, were required to consist of not less than 15 .members, who should possess certain powers and privileges under the jurisdiction of the Supreme Sitting; that there were about 1,190 local branches established in the United States, and 9 .in Canada, making a total membership exceeding 60,000 persons, including those in the benefit division and life division, all of whom were subject to the authority and control of the main organization and its officers, under the articles of association, constitution, laws, and regulations of the Supreme Sitting, and each of which said local branches has in its hands, accumulated as a reserve fund, a large amount of money, the amount in Detroit alóne ranging from $300 to $14,000; that the Supreme Sitting continued to exist and carry on its business until about the 29th of July, 1892, when it became insolvent, and upon a bill filed in the superior court for Marion county, Ind., one James F. Failey was on the 23d day of August, 1892, appointed receiver of all the property and effects of every kind of the said Supreme Sitting of the Iron Hall, both within and without the state of Indiana, with full power to receive, demand, and collect in his own name, as receiver, from the defendant and all of its officers, agents, branches, bankers, and any and all other persons, whether within or without said state, and to take, hold, and keep in his possession, under the direction of said court, all of said property, rights, credits, and effects, books, papers, and things, of any and every description, belonging to the defendant at the time of bringing such action on July 29, 1892, or since acquired, and to do and perform all and singular the duties imposed upon him and required by law; that Mr. Failey duly qualified as such receiver, and entered upon the performance of his trust; that on the 2d of December, 1893, a final decree was entered in that court and cause, in which it was adjudged that the said

Supreme Sitting of the Order of the Iron Hall, at the commencement of said action, was, and ever since had been, insolvent and unable further to carry on the business for which it was organized, and that its assets and property should be reduced to money, and paid and applied upon its debts and outstanding obligations; and Mr. Failey was continued and confirmed as permanent receiver of said order.

September 27, 1892, a bill of complaint was filed in the circuit court for the county of Wayne, in chancery, by one Lewis P. Durkee, in behalf of himself and all others interested who should choose to come in and be made parties, praying that a receiver be appointed in aid of and ancillary to the administration and receivership of all the property and effects of the defendant corporation appointed by the court in Indiana; and on the 1st of October, 1892, an order was entered in said Wayne circuit court, in chancery, appointing Stephen Baldwin, of Detroit, this State, as such ancillary receiver of all the property and effects of the order within the State of Michigan.    Mr. Baldwin thereupon duly qualified, and entered upon the discharge of his trust, and such proceedings were thereafter had that on February 9, 1894, a final decree was entered in said Wayne circuit court, in chancery, in which it was declared that the defendant corporation, the Supreme Sitting of the Order of the Iron Hall, was on the 29th of July, 1892, and ever since had been, insolvent; that it was unable further to carry on the business for which it was organized within the State of Michigan and elsewhere; and that its assets and property should be reduced to money, and applied upon its debts and outstanding obligations and liabilities,—and in which decree Mr. Baldwin was further continued and confirmed as ancillary permanent receiver of all such assets within the State of Michigan, with direction and authority, among other things, to take, hold, and

convert into money, under the order and direction of the court, all the property, real, personal, and mixed, of every kind, belonging to said Supreme Sitting of the Order of the Iron Hall, with full power to demand, receive, and collect in his name as receiver or otherwise, as he might deem proper, from the defendant and all its agents, officers, branches, bankers, and any and all other persons within the State of Michigan, all such property and effects, and to take, hold, and keep in his possession, under the direction of the court, all such demands and effects, books, papers, property, and other things, of every description, belonging to the defendant corporation on July 29, 1892, or since acquired, and to do and perform all and singular the duties imposed upon him or required by law.

It is further alleged in the petition that the organization was effected and existed only under the laws of the state of Indiana, and that the branches of the order existed, not by independent authority of any state in which they were situated, but solely by the authority of the charter granted to them in pursuance of the constitution and laws of the order under which they were permitted and organized.

It is further shown that local or sisterhood branch No. 5, so called, was one branch of the Supreme Sitting of the order in the State of Michigan, and was organized as such under the rules, regulations, constitution, and laws of the Supreme Sitting; that, at the time of the filing of the bill in this cause, Peter J. Schiffer, Jr., was the chief justice of said branch, Fred. J. Kirts, accountant, John G. Starling cashier, and George Leitch, Fred. Linsell, and Charles Hampshire trustees; that afterwards Fred. J. Kirts removed from the city of Detroit, and one Carlton H. Royce was appointed or elected his successor, and that Charles Hampshire died, and Charles L. Beck was afterwards appointed or elected his successor, as trustee; that,

at the time of filing the bill in this case, the said chief justice, accountant, cashier, and trustees had charge of the funds, property, and assets of the Supreme Sitting, which were collected and received through the instrumentality of said local or sisterhood branch No. 5, and that they then held in moneys, property, and securities of said order the sum of about $20,000, which was subject to the order and direction of the Supreme Sitting, and subject to the decree before mentioned; and that, at the time of filing this petition, the said officers and trustees held the moneys in the possession of the branch, which sum was subject to the order and direction of the Supreme Sitting, and subject to said decree.

It is further alleged that the petitioner caused a copy of the order appointing him receiver in this State, and a copy of the final decree in the cause, to be served upon the officers and trustees of said branch No. 5, and also caused personal written demands to be made upon each and every of said officers and persons for all moneys, property, goods, chattels, and effects in their hands belonging to the Supreme Sitting; but that said officers and trustees refused to comply with such demands, and pay over the said moneys, property, and effects to the petitioner.

It appears that on March 12, 1894, the petitioner caused a petition to be filed in the Wayne circuit court, in chancery, praying that the officers of local branch No. 5 of said order might be ordered and required to show cause in said court why they should not be punished for contempt in neglecting and refusing to turn over to the petitioner such moneys, property, and effects in their hands and under their control, and that an attachment or other process might be issued requiring the persons named to comply with such order; and that, on said 12th day of March, that court entered an order requiring such persons to show cause on the 19th of March why they should not be pun-

ished for contempt, and why an attachment should not issue as prayed in the petition. On the 19th day of March, in response to the order, the officers and trustees of said local branch appeared and answered the petition. In their answer they say:

1. That they were not in any way parties to or bound by the proceedings by which Mr. Baldwin was appointed receiver ancillary to the receiver appointed by the court of Indiana; and, upon information, they assert that the appointment of Mr. Baldwin was made at the instance of the Indiana receiver, though, as he is not a party, he cannot be bound thereby, and for the purpose of taking all the funds belonging to branch No. 5, as well as those belonging to other branches, out of the State, and distributing them mainly among persons who have not contributed to them, and against the equitable rights of the members of branch No. 5, and that said appointment is unauthorized and void.

2. That the Order of the Iron Hall, and especially the Supreme Sitting thereof, was devised and conducted with the grossest fraud, and that this appears in the bill filed in the cause; and that, in consequence, any contract between said Supreme Sitting and the local branches is void, at the option of said branches. They aver further, on the advice of counsel, that, while said order claimed to be a corporation organized under the laws of Indiana, in fact there has not been and is not any law of Indiana under which said corporation could organize, and that the claim to be a corporation is a fraudulent scheme, devised to deceive and defraud the members of the local branches.

3. That all the funds in their hands have been contributed by the members of said local branch No. 5; that these moneys were contributed by each member under the belief that he would receive the benefits promised in the contract; and that, with the failure of the order, justice requires that these moneys should be returned to those who contributed them.

4. That, under the rules of the order, every local branch, in proportion to the number of its members, should have a fund nearly equal to that held by any other local branch; and that, if the funds in the possession of each branch be distributed among its members, justice will be better done than in any other way.

5. That if the money in question is to be sent to Indiana, and there distributed, the members of local branch No. 5 will be put to great expense in proving their claims in the Indiana court; that, as they are informed and believe, dividends have already been made by said Indiana receiver in which the members of said branch No. 5 will not be able to participate; and that the result will be that such members will receive a much smaller dividend than if the money be divided among those who have contributed it.

6. They admit that the fund in their hands or under their control is respectively as follows: Peter J. Schiffer, Jr.. has nothing; Fred. J. Kirts has about $1,000; Carlton H. Royce has nothing; John G. Starling, George Leitch, Frederick Linsell, and Charles L. Beck have in money and securities about the sum of $15,000.

7. The respondents Starling, Leitch, and Linsell, further answering, say that on or about August 23, 1892, they, with John T. Younghusband and Charles Hampshire, were served with a writ of garnishment issued out of the circuit court for Wayne county, in a cause therein pending in which Louis Cohen is plaintiff and the Supreme Sitting of the Iron Hall defendant; that they, as garnishee defendants, are enjoined from paying over any money or delivering any property or effects to said principal defendant until the further order of the court; that said cause is still pending and undetermined in said court; that said Charles Hampshire, named in said writ, is now dead, but that, at the time of the service of said writ, he was one of the trustees of branch No. 5; and that Beck, one of the respondents herein, was duly appointed as his successor.

The issues raised by these pleadings were referred by the court to a commissioner to take proofs, whereupon the parties entered into a stipulation as to the facts which they deemed material to the issues. The stipulation admits the organization of the defendant company, and also sets out the various provisions of the statutes of Indiana authorizing the formation of corporations which were in force at the time this corporation was organized. The court thereupon entered an order denying the relief asked, and refusing to adjudge the parties guilty of contempt.

It is now averred by the petition here that, under the pleadings and proofs so stipulated, it is shown that the officers and members of local branch No. 5 received their charter and rights from and under the Supreme Sitting, and that the property, money, and effects held by said branch belong to the Supreme Sitting; and it is prayed that a writ of *mandamus* issue to be directed to the Honorable George S. Hosmer, circuit judge, commanding him to show cause why he should not set aside and vacate the order denying the relief prayed,. and why he should not proceed, in said court and cause, to compel the payment of said moneys now in the hands of such local branch to such ancillary receiver by the ordinary proceeding as for contempt, and why he should not enter an order in said court and cause adjudging the officers of said local branch in contempt of the authority of the court in neglecting and refusing to pay over said moneys.

An order to show cause was issued, and the circuit judge has made a return thereto substantially as follows:

1. That the order and decree appointing Stephen Baldwin as receiver of the assets ·of the Supreme Sitting of the Order of the Iron Hall, and the order that the local branches turn over their assets to said receiver, were granted in a suit in which none of said local branches or their trustees or other officers were made parties; that said order and decree were made without opposition or discussion, and by the consent of all the parties represented.

2. That when the answer of Peter J. Schiffer, Jr., and others, officers of branch No. 5, was filed in the contempt proceeding instituted· by said receiver, it became evident that several serious questions of law were involved, some of which are as follows:

a—Whether or not there was any law of Indiana authorizing the formation of the corporation of the Supreme Sitting of the Order of the Iron Hall.

b—Whether or not the bill does not show that the organization of such association was so fraudulent as to release all the branches from their obligations or contracts entered into with said Supreme Sitting.

*c*—Whether or not, on the dissolution of said Supreme Sitting, from whatever cause, equity does not require that the moneys in the hands of the local branches be distributed among the persons who have contributed the same, the purposes of such contribution having wholly failed.

*d*—Whether or not a court of equity in this State will not protect the persons equitably entitled to the funds held by the local branches of this State by a division here, instead of compelling them to prove their claims before the court of Indiana, and taking such dividends as may be there ordered.

*e*—Whether or not the different local branches have such connection as renders the appointment of one receiver for all proper.

*f*—Whether or not it is proper for a court of equity to appoint in this State a receiver ancillary to the Indiana receiver.

*g*—Whether or not, under the averments of the bill to the effect that all the assets of said Supreme Sitting have been assigned to said Failey, by the voluntary assignment of said Supreme Sitting, any receiver should be appointed of such assets, and whether such appointment is not, for this cause alone, void.

3. That this respondent is of the opinion that it is not proper that said questions should be decided on application to punish for contempt; that, in his opinion, when persons who are not parties to a suit in which a receiver is appointed make a *bona fide* claim to property claimed by the receiver, the dispute should be decided in a regular suit brought by the receiver against the parties making the claim, and he submits that this rule is laid down by the authorities, citing *Ex parte Hollis*, 59 Cal. 405; *In re Paschal*, 10 Wall. 483; Beach, Rec. § 247; *State v. Ball*, 5 Wash. 387.

4. For these reasons, the respondent refused to punish the officers and agents of local branch No. 5 for not turning over their funds to the receiver; but, at the same time, the court offered the attorney for the receiver, and who has appeared in said proceeding for him, an order permitting the receiver to sue the officers and agents of the local branch, and this offer was refused.

There is returned into this Court, as a part of the case, a copy of the decree made by the Indiana court appointing Mr. Failey receiver, and defining his powers and duties, the constitution and by-laws of the Supreme Sitting of the order, a copy of the bill filed by Mr. Durkee, and the decree made by the Wayne circuit court appointing Mr.

101 MICH.—9.

Baldwin ancillary receiver, and defining his powers and duties.

It appears from the decree of the Indiana court that the corporation was organized under the Indiana statutes. Whether such organization was authorized by those statutes does not seem to have been raised by the Indiana court, or, if so, the proceedings before us do not disclose the fact. That court proceeded to authorize the winding up of the concern and the collection of the assets, and, for that purpose, directed the receiver to collect from the local branches and others, whether within or without the state of Indiana, the property and assets of the corporation. Upon the appointment of the ancillary receiver within this State, he was authorized to receive and collect the assets within this State; but it is nowhere provided in the decree that the moneys shall be transmitted by the ancillary receiver to the receiver at Indianapolis, but that he shall report to the court his doings in the matter, to the end that the court may make such further order in the premises as justice and equity may require.

By the articles of association and the laws of the order, these local branches are made subordinate to the Supreme Sitting. All their powers and duties are set forth therein, and they exist only by authority of the law of the Supreme Sitting. The moneys now held by the officers of local branch No. 5 were collected by and under the authority thus conferred. The constitution and laws of the order provide for the raising of these funds. Section 1, law 1, is as follows:

"There shall be attached to this order a benefit fund in which members may participate (except social members) as they may severally elect, either in the sum of $1,000, $800, $600, $400, or $200, on which they shall pay the rates and be entitled to the benefits prescribed in the following table," etc.

One of the objects of the organization, as stated in article 2, § 3, of the constitution, is as follows:

" To establish a benefit fund from which those who have held membership in the order for 30 days or more may, should they so desire, on proper application, and complying with all the rules and regulations governing said benefit fund, become participants therein, and may receive the benefit of a sum not exceeding $25 per week, nor more than one-half of the amount of the benefit certificate held by each member, when, by reason of disease or accident, they become totally disabled from following any avocation; or in case of death, if a member for more than two years, one-half of the amount of the benefit certificate will be paid, less benefit received, or an amount of not more than $1,000 when they have held a continuous membership in the order for seven years:

"*Provided*, however, that the sum total drawn from this order by any of its members shall never exceed in sick, disability, death, and final benefits the sum named in the benefit certificate."

This benefit fund was derived from assessments upon the holders of benefit certificates, which assessments were made by the Supreme Sitting of the order from time to time, and out of which benefits were paid in case of the sickness, disability, or death of a member. The assessments were made through the local branches, and 80 per cent. thereof was sent to the supreme cashier of the Supreme Sitting. Law 2, § 1, is as follows:

" Twenty per cent. of the amount received by each branch on each assessment shall be set aside and retained as a reserve fund, which fund is the property of the Supreme Sitting, and shall be subject to its control at all times, as hereinafter provided. At the expiration of the first term of six years and six months from the date of the organization of the order, one-seventh of the reserve fund then on hand shall be called for by the supreme accountant, and used by the supreme cashier in the payment of benefits; and annually thereafter one-seventh of the reserve fund on hand shall be called for and used in like manner, unless otherwise ordered by the Supreme Sitting."

An examination of the various provisions of the constitution and laws of the order convinces us that the legal title to this reserve fund is in the Supreme Sitting of the order, and not in the different local branches; that the 20 per cent. of the assessment retained by each local branch differs from the 80 per cent. transmitted to the Supreme Sitting, mainly in this: that the possession and supervision subject to such laws remains with the local branches. The whole fund is for the protection of, and payment of benefits to, holders of benefit certificates; and the reserve fund seems to us essentially a part of the benefit fund, although it may be in the nature of a safety fund to insure the payment of maturing certificates.

This question has lately been before the court of last resort in Massachusetts, in the case of *Buswell v. Supreme Sitting*, 161 Mass. 224. There it was held that the funds held by the local branches of the order belonged to the Supreme Sitting, and we think there can be no escape from such conclusion. In a late case in equity, brought in New Jersey, the vice chancellor held the same rule, and determined that the fund belonged to the home company. *Ware v. Supreme Sitting*, 28 Atl. Rep. 1041. Several of the states, through their courts of last resort, have passed upon this question, and, so far as we have found, have not held to the contrary.

It is said, however, that there was no legal incorporation in Indiana. We are not called to pass upon that question. The courts of Indiana have permitted the proceedings to be brought there to wind up the affairs of the order as a valid and subsisting corporation, and have recognized its legal *status*. The several courts of other states have also taken jurisdiction by the appointment of ancillary receivers to aid in collecting the funds to be transmitted to the home receiver. But we think the parties here are not in a position to raise that question.

These local branches and their officers are a part of the order, and cannot, in this proceeding, question its due incorporation. *Merchants', etc., Bank v. Stone,* 38 Mich. 779; *Empire Manfg. Co. v. Stuart,* 46 Id. 482; Nibl. Mut. Ben. Soc. § 2.

The object of the association was to create what is called a "benefit fund." The constitution and laws of the order was the contract between the parties. Courts can only enforce the contract as made, which is that the fund shall belong to the Supreme Sitting, and be distributed so that each member shall derive a benefit from the entire corpus of the assets of the Supreme Sitting, without regard to its local habitation. It was for the purpose of collecting in these assets in this State that the ancillary receiver was appointed. There can be no doubt of the right of a court of chancery within this State to make the appointment. Mr. Baldwin was so appointed, and is attempting to gather in these assets. These are trust funds for creditors and for distributees under the laws of the order. It is a principle now generally acted upon by the courts that a receiver or other trustee appointed in another state will be permitted, on the principle of comity, to bring an action in the domestic forum for the purpose of collecting the assets of the insolvent for distribution, in accordance with the laws of the jurisdiction within which the receiver has been appointed, when so to do will not contravene the rights of citizens of the state in which the action is brought. *Metzner v. Bauer,* 98 Ind. 425; *Bagby v. Railroad Co.,* 86 Penn. St. 291; *Trust Co. v. Railroad Co.,* 123 N. Y. 37; *Comstock v. Frederickson,* 51 Minn. 350; *Graydon v. Church,* 7 Mich. 36. But the rule of comity is never allowed to operate when it will contravene the rights of a citizen of the state where the action is being taken. So far as this local branch and its officers and members are concerned, however, they are part and parcel

of the corporation.    The receiver appointed in Indiana and the ancillary receiver appointed here not only represent the creditors of the corporation, but stand in its stead; and under the decree of the Indiana court and of the Wayne circuit court, in chancery, in this State, they are directed to gather in the assets.    Unless some reason is shown why that order should not be carried out, this local branch and its officers and members cannot refuse to turn over the assets to the ancillary receiver; and, when he has possession of such assets, the court may order them transmitted to the Indiana receiver.    But such order should be made only when it is made certain to the court that the members from this State will share proportionately with the other members throughout the organization.    The fund is found in many different states, and comity requires that we should do all we can to insure, as far as possible, a speedy distribution of the whole property among those entitled to it.    But the court below must have some discretion in making this order so that the rights of the citizens of this State may be protected.

By the answer of the local branch and its officers, it appears that the fund has been garnished in their hands, and that such proceedings are still pending and undetermined.    Certainly, the court would not make an order for the payment of this fund into the hands of the receiver until the questions arising under the garnishment proceedings are determined.    The plaintiff in that case has a right to his day in court before he can be deprived of the fund, or before the local branch and its officers are bound to pay it over to the receiver.    The plaintiff in the garnishment proceedings is not a party here, and his rights cannot be here litigated.    If he has obtained a valid lien on the fund, that lien is not dissolved by the filing of a bill and the appointment of a receiver, but may be enforced. *Hubbard v. Bank*, 7 Metc. 340; *Taylor v. Insurance Co.*,

14 Allen, 353; *Folger v. Insurance Co.*, 99 Mass. 267. Proceedings for contempt are not appropriate for the trial of issues involving the title to this fund, or to determine the validity of the lien which the garnishee claims. *Ex parte Hollis*, 59 Cal. 405; *In re Paschal*, 10 Wall. 483; *State v. Ball*, 5 Wash. 387.   In Beach on Receivers (section 247) it is said:

"It is also equally well settled that, in a proceeding to punish for contempt of court, the question of the title to the property cannot arise or be adjudicated.   The court will not in such a proceeding do more than pass upon the bare question of contempt.   It will not directly or indirectly assume to consider or to decide to whom the property belongs, or to decide that the receiver has or has not the right of possession in and to it."

The court below offered to permit the receiver to bring suit for these assets, which offer was declined.   We think the court, under the facts stated in the answer of the local branch and its officers, properly refused to adjudge the parties guilty of contempt.   We may remark, however, that, if the assets are finally paid into the hands of the receiver, it will be the duty of the court to direct that, upon their payment over to the Indiana receiver, the Michigan claimants shall receive a proportionate dividend with creditors elsewhere.

The writ will be denied.

The other Justices concurred.