ROBINSON W. CATOR, and others, trading as ARM-
STRONG, CATOR & CO. *vs.* HADASSEH MARTIN and
HELEN MARR, trading as MISSES MARTIN &
MARR.

*Construction of Art. 48, of the Code, Insolvent Law, as
Amended by the Act of 1880, ch. 172.*

A joint proceeding against several as partners, will not lie under
the Insolvent Law of this State, but such proceeding must be
taken against each separately.

APPEAL from the Circuit Court for Washington County.

In February, 1881, Robinson W. Cator and others, trad-
ing as Armstrong, Cator & Co., filed a petition in the
Court below, in which they alleged that they were credi-
tors of Hadasseh Martin and Helen Marr, (*femes sole*) co-
partners, trading as Misses Martin & Marr, residents of
Washington County, Maryland, and merchants at Hagers-
town in that county, in the sum of $829.36, for goods sold
and delivered by the petitioners to Hadasseh Martin and
Helen Marr, for part of which account Misses Martin &
Marr had made to them, payable to their order, their two
promissory notes, one dated the 27th July, 1880, and the
other dated the 12th December, 1880, each for $102.50,
the first payable five months, and the other one month
after date, and when paid to be credited on the account,
but that neither of them were paid ; and that Hadasseh
Martin and Helen Marr, merchants, being in contempla-
tion of insolvency in the one case, and insolvent in the
other, within sixty days before the filing of the petition,
suspended payment of their negotiable paper, and failed to
resume payment thereof within twenty days ; that Hadas-

seh Martin and Helen Marr being insolvent, did, and each of them did, on the 1st January, 1881, execute a deed to Henry Kyd Douglas and John F. A. Remly of all their property and effects, in trust for the creditors of the said Hadasseh Martin and Helen Marr, giving to the First National Bank of Hagerstown a preference in the payment of a certain promissory note for $850, said note not being for the payment of wages or salaries to clerks, servants or employés, made by the said Hadasseh Martin and Helen Marr, which note was held by the bank, contrary to the provisions of the Code, Article 48, and the Act of 1880, ch. 172, amendatory thereof; which said deed was recorded on the 3rd January, 1880, within sixty days before the filing of this petition, and therewith filed; and that the deed was made with the intent to delay, hinder and defraud creditors.

The petitioners then alleged that they were advised, that Henry Kyd Douglas and John F. A. Remly had taken possession of certain property of Hadasseh Martin and Helen Marr, consisting principally of millinery, ribbons, white goods and notions, in the store-room of Misses Martin & Marr, in Hagerstown, and that the said Douglas and Remly had disposed of certain of said goods, and were endeavoring to dispose of the residue, with the intention of applying the moneys derived from such sales, to the payment of the debts of Hadasseh Martin and Helen Marr, in accordance with the terms of the deed.

The petitioners therefore prayed process against the said Hadasseh Martin and Helen Marr, and that each of them might be adjudicated insolvents, under the provisions of the Insolvent Laws of this State, and that pending the determination of the application for such adjudication, an order might be passed, in the nature of an injunction, to restrain the said Hadasseh Martin and Helen Marr, and each of them, from disposing of any of their property, and also to restrain the said Henry Kyd Douglas and

John F. A. Remly, their agents and employés, from selling or disposing of any of said property, or disposing of any of the funds or moneys derived from sales already by them made, or collected by them, as of the property or credits of the said Hadasseh Martin and Helen Marr, since the filing of the deed.

On this petition, by order of Court, summons and injunction were issued.

The answer of Hadasseh Martin and Helen Marr, partners, trading as Misses Martin & Marr, admitted their indebtedness to the petitioners; the making of the deed of trust to H. K. Douglas and J. F. A. Remly; but denied having committed any act of insolvency, either by the making of said deed of trust, or in any other manner, as charged in the petition.

By agreement of counsel, the following facts were admitted: the existence of the co-partnership of Misses Martin & Marr, as set forth in the petition; and of that of Armstrong, Cator & Co.; the correctness of the claim of Armstrong, Cator & Co., against Misses Martin & Marr, as set forth in the petition and exhibit, and that the same is wholly unpaid; the genuineness of the signatures of the Misses Martin & Marr, to the notes described in the petition; the due execution of the note of $850, described in the petition and deed of trust; the execution of the deed of trust; that the partnership property conveyed by said deed of trust would approximate in value the sum of the inventory—about $3300. Money realized about $1500; that the individual property conveyed by said deed of trust was very little; and that the partnership debts of the firm of Misses Martin & Marr, largely exceeded the partnership assets, and the assets of the individual members of said firm aggregated about $2700.

Hadasseh Martin and Helen Marr severally demurred to the petition.

The Court below (ALVEY, J.) dismissed the petition with costs to the defendants, and filed the following opinion:

" The acts of insolvency charged in the petition, assuming the facts alleged to be true, would certainly bring the parties proceeded against within the terms of the 23rd section of Art. 48, of the Code, as amended by the Act of 1880, ch. 172, and render them subject to the involuntary proceedings provided for by sec. 24 of that Article. But this is a joint proceeding, taken against the defendants as partners; or in other words, it is a proceeding against a firm or partnership as such, to which the defendants have objected by demurrer; and the question is, whether such joint proceedings can be maintained under the provisions of our insolvent law. It presents a question of practice, of very considerable importance, though I think, upon reflection, after careful examination of the provisions of the statute, it is quite clear that such proceeding cannot be maintained.

"It was certainly never supposed, so far at least as I am informed upon the subject, that either the original insolvent debtor's Act of 1805, or any of its various supplements, ever contemplated joint applications by partners or partnerships, for the benefit of the insolvent law. Indeed, it is clear beyond all question, that they did not; for the provision with reference to the imprisonment of the applicant, as well as other conditions and requirements of those statutes, made it manifest that they contemplated only separate individual applications, and not joint applications, or proceedings by partners or others. If all the members of a firm, whether few or many, became insolvent, and desired to obtain the benefit of the insolvent law, they had to make separate and distinct applications. And I think it equally clear, that the Act of 1854, which is the present insolvent law of the State, except as it has been amended by the Act of 1880, made no change in this respect. The amendment of 1880, while it adds a new feature to our insolvent system, copied, it would seem from the bankrupt law of the United States.

Armstrong, Cator & Co. vs. Martin & Marr.

of 1867, makes no provision whatever for proceeding against partnerships or parties, or partners. The whole text of the law, and each and all of its provisions, plainly show that it only was intended to apply to separate individual cases of insolvency, and not to any joint proceedings against partners. And it being beyond question or dispute, that the law, before the last amendment, did not authorize joint voluntary applications on the part of debtors, there is no reason whatever to be assigned, why the application by creditors under the involuntary clause, added by the amendment, should be allowed to be taken against any number of persons jointly, in the absence of express authority for such proceeding. There is nothing in the law that affords the slightest ground for supposing that any such feature was intended to be introduced. On the contrary, sec. 24 of the Article expressly provides, that from the time that the party is brought in, and adjudged to be an insolvent, " the same proceedings shall be had as hereinbefore prescribed, in relation to persons who shall apply for the benefit of the provisions of this Article."

"By the United States Bankrupt Law of 1867, ch. 176, Revised Statutes, secs. 5121, 5122, partnerships and corporations were expressly provided for. But from the express provisions made, it is plainly to be inferred, that in the absence of such express provisions, the Act would no more have applied to partnerships, than to corporations; that provision, therefore, in the Act of Congress, is no authority for supposing that the same thing was intended by our own amendatory Act of 1880 ; on the contrary, the inference is strongly the other way, no express provision having been made upon the subject by our statute.

"The statute must be construed to provide for cases of partnership, as such, or, that it has not so provided. It is not a mere question of form or convenience, to be adopted

26                    v. 57.

at the pleasure of the creditor, or not, at his simple elec-
tion. The question is, whether the proceeding be fairly
within the meaning and contemplation of the law, or
otherwise; and I think, it is not within the meaning.

"By the first section of the Article, the application by
the debtor, can only be made in the city or county where
he may reside, and by the 24th section, it is provided, that
the petition under the involuntary clause, can only be-
filed "in any of said Courts *having the right to take juris-
diction of the debtor*, so committing any act of insolvency,"
&c. Now, we know, that many of the firms doing busi-
ness in the City of Baltimore, and in the counties too, are
composed of members residing in different localities and
jurisdictions, and no insolvent proceedings could be had
against these different members, except in the particular
jurisdictions of their residence, and if the law had designed
to provide for a joint proceeding against the partners, and
to have all the estate of all the partners jointly adminis-
tered in one jurisdiction, it would have been eminently
necessary and proper, to have made special provision for
such case.

"Then again, by the same section 24, it is provided, that
after the party is adjudged an insolvent, "the said debtor
shall thereupon, immediately execute the schedule and
lists of debts, verified by his affidavit, as provided by
section one of this Article, and the debtor shall be enti-
tled to a discharge from all debts and contracts made
before the filing of the petition in this section mentioned,
in the same manner, and to the same extent, and with
the same exceptions, as though he had made application,
as provided in section one of this Article; now, if the
proceeding is to be a joint one, how, in obedience to this
requirement of the law, could three or four, or it might
be a dozen partners, of which a partnership might be
composed, verify and swear for each other, as to the cor-
rectness and *bona fides* of schedules of property, and the

good faith of acts, &c., that related not only to partnership affairs, but to the separate estate and affairs of each partner. Each partner, of course, would have to assign not only his interest in the assets of the partnership, but all his separate estate, and therefore separate deeds would have to be made. The only object of a joint proceeding would be to have all the estate of the partners administered together, and as one fund; but there would be great difficulty and hardship in many cases in this. In the first place, there would be difficulty in the selection of the trustee. What creditors would participate in the selection; all the creditors of all the partners generally, or only the joint creditors; some partners might have very small assets and a very large number of creditors, and in such case it would not be fair, that those creditors should control in the selection of trustees for the administration of other persons' estates. Then, too, the mixing up the several separate estates, could not fail to produce trouble and confusion.

"The insolvency of the partnership, of course, involves that of all the members, except in the case of a limited partnership; for the simple reason that the private property of each member is liable for all the debts of the partnership. But individual partners may be insolvent without, of necessity, rendering the partnership insolvent. Each partner may be proceeded against as an insolvent debtor, and if all the partners are declared insolvent, there is no greater difficulty in settling the affairs of the partnership than there has heretofore been, under our insolvent laws, where members of partnerships have applied for the benefit of the insolvent law, and their interests in the partnership assets have passed into the hands of trustees. In all such cases the partnerships were dissolved, and accounts taken to ascertain the interest of the insolvent after payment of debts."

Whereupon the petitioners appealed.

The cause was submitted to the Court upon briefs.

*Edward Stake*, and *Lewis C. Smith*, for the appellants.

All the allegations of the petition are admitted, and the relief prayed for is denied solely because separate petitions were not filed against each of the parties proceeded against. The petition alleges " that the said Hadasseh Martin and Helen Marr, being insolvent, did, and each of them did," commit the several acts of insolvency charged. It is not contended that where A. and B. (partners, if you please,) each commit a separate and distinct act of insolvency, the one in nowise connected with, interested in, or affected by, the act of the other, proceedings could be instituted against them in one and the same petition. But, in our case, the defendants each commit the same act, or, if you will, join in the commission of the same act, which affects the same property, and the same creditors. In other words, the defendants have no property save that which they hold as partners, owe no debts save partnership debts, and as partners, and as individuals, unite in the same acts of insolvency.

Why the necessity, then, of subjecting creditors to the expense of two proceedings, in each of which there would be the same allegations, the same proof, the same property, and the same parties. As the acts of insolvency were committed at the same instant of time, the separate petitions would be filed against each of the defendants at the same time. A preliminary trustee in each case, would be appointed on the same day. Which of them would be entitled to the property? Which of the permanent trustees would be entitled to the property?

By express provision, the Bankrupt Law was made to apply to corporations and joint stock companies,—the 37th section reading as follows : " And be it further enacted, that the provisions of this Act shall apply to all moneyed, business or commercial corporations and joint stock com-

panics," &c., &c. In no section of the Bankrupt Law is there found an express provision making it applicable to partnerships, as in the case of corporations. But sec. 36 assumes that the general language of the Act includes partnerships, and then proceeds to lay down the practice in such cases. So with our insolvent laws ; the general language of the Act of 1880 includes partnerships, and in the absence of express regulations as to the practice, the Courts must adopt such regulations as will best subserve the intent of the Act.

There is no provision in the Act of 1805, or in any of the subsequent statutes on the subject, which would have prevented two parties, circumstanced as are the defendants, from uniting in the same petition as voluntary insolvents.

The great end sought by involuntary insolvency is to compel an equal distribution of the insolvent's property among his creditors, when it is insufficient to pay the whole indebtedness. This is the object in our system. Is it to be hampered by technicalities, or in the absence of express provisions as to the mode of procedure, will the Courts approve of that form which will attain the end with the least expense ? From the language of the petition, the appellants are entitled to relief, whether the defendants be regarded in the light of partners, as such, or as separate individuals uniting in the same acts.

*H. K. Douglas*, and *J. F. A. Remly*, for the appellees.

If it is possible for us to add anything effective to the opinion of Judge ALVEY, it is not much. In addition to what he has said in regard to the Bankrupt Law of the United States, we may say that under the general Bankrupt Law, as set out in the Revised Statutes, partnerships or corporations might have voluntarily gone into bankruptcy, or involuntarily been forced into it, because the Revised Statutes declare (ch. 1, sec. 1,) " The word person may extend and be applied to partnerships and corpora-

tions." And yet Congress thought it necessary, in the Bankrupt Law of 1867, to provide expressly for partnerships and corporations, and to establish machinery for procedure in cases of their bankruptcy. Otherwise, it is apparent from reading sections 5121 and 5122 of the Revised Statutes, that although the general Bankrupt Law may have included partnerships and corporations, such a construction could not have been made effective in proceedings against them, for want of machinery. There is nothing in our Insolvent Law to take the place of these sections, and there is no provision in our Code that "person" may include or mean partnership and corporation. This position is further illustrated by the law of Massachusetts, as we can gather it from the decisions, in the absence of the statutes or code. There it seems a proceeding can be instituted by partners as a partnership, or against them, by virtue of the Act of 1838, authorizing it. Apparently it gives the remedy and provides the *modus*. The difficulty suggested by Judge ALVEY, which would arise, if proceedings against partnerships were permitted in this State, when different partners reside in different counties, while the petition can only be filed in a Court having jurisdiction of the debtor, seems to be provided for by the Massachusetts statute, even if one of the partners is a non-resident. *McDaniel vs. King, et al.*, 5 *Cush.*, 469.

But the petition in the case at bar, would not be good under the law of Massachusetts. It is directed specially against the Misses Martin & Marr, as partners, and does not make the distinct allegation that both the partnership and the partners, individually are insolvent. This it ought to do. A partnership cannot be said to be insolvent while any of the partners are able to pay its debts. Here the petition is apparently directed entirely against the partnership, and all of its allegations are very indefinite. *Dearborn vs. Keith*, 5 *Cush.*, 226; *Parker vs. Philips*, 2 *Cush.*, 175; *Hanson vs. Paige*, 3 *Gray*, 239.

Montague *vs.* Sewell.

By the Court.

This cause was submitted upon the briefs without argument, and has been since carefully considered; and we affirm the order appealed from for the reasons so well assigned in the opinion of the learned Judge of the Circuit Court, before whom the case was tried. See also *Gable and others vs. Scott, Knell and others,* 56 *Md.,* 176.

*Order affirmed.*