CHARLES C. PINCKNEY, JR. *vs.* THOMAS M. LANAHAN, Garnishee of ROBERT W. L. RASIN, &c.

*Partners—Deed for benefit of Creditors—Surviving Partner adjudged an Insolvent debtor—Effect of such Adjudication—Attachment by Foreign Creditor—Assets not subject to Attachment—State Insolvent law—Extent of operation of such law.*

R. and C., partners, trading as R. & Co., being embarrassed and in failing circumstances, conveyed to L. and others, their individual and partnership property in trust, for the benefit of their creditors. These conveyances were absolutely null and void as to creditors. After their execution, certain creditors of R. & Co., on the 13th of February, 1882, filed petitions in the Court of Common Pleas, praying to have the said R. and C. individually adjudged insolvent debtors. Pending these proceedings, and before adjudication had on the same, C. died. Subsequently, on the 15th of November, 1883, R. the surviving partner, was adjudged an insolvent debtor, and G. was duly appointed his permanent trustee, and gave bond as such according to law. Prior to such adjudication, on the 13th of March, 1882, P., a foreign creditor, obtained a judgment against R. & Co., and on the following day an attachment was issued on this judgment, and laid in the hands of L., trustee. L., as garnishee, pleaded, and moved that the writ of attachment be quashed. P., the plaintiff, replied, and L. demurred to the replications, and issue was joined on the demurrer. G., the trustee in insolvency of R., also intervened, claiming title as such trustee to the property attached. HELD:

1st. That the adjudication of R., the surviving partner, as an insolvent debtor, transferred to G. his permanent trustee, the partnership assets of R. & Co.

2nd. That this transfer was binding on the plaintiff, although a non-resident creditor, and the property thereby transferred was not subject to attachment, either in the hands of the permanent trustee of R., or in the hands of L. as garnishee.

A State may pass an insolvent law discharging the person of the debtor and his future acquisitions of property from the payment

of his debts, so far as it concerns contracts between citizens of the State, made within the State, after the enactment of such laws.

Such laws, however, do not apply to contracts between citizens of one State and citizens of another State.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROB-INSON, IRVING, and BRYAN, J.

*Stewart Brown,* and *Bradley T. Johnson,* for the appellant.

*Thomas M. Lanahan,* and *Severn Teackle Wallis,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

The appellant, a citizen of South Carolina, obtained a judgment on the 13th of March, 1882, for $14,696.85, against Robert W. L. Rasin and Edward K. Cooper, trading as R. W. L. Rasin & Co.

On the 14th of March, 1882, an attachment was issued on this judgment, and laid on the same day in the hands of Thomas M. Lanahan, trustee.

To the plea of the garnishee, the appellant filed eight replications, to all which the garnishee demurred.

Gosnell, the permanent trustee in insolvency of Rasin, the surviving partner of Rasin & Co. also intervened, claiming title, as such trustee, to the property attached in the hands of the garnishee.

The Court below rendered judgment on the *demurrer* for garnishee, and quashed the attachment. Hence this appeal.

Without setting forth the pleadings at length, it is sufficient to say, the demurrer on which the judgment

of the Court was rendered admits, that Rasin and Cooper, being embarrassed and in failing circumstances, conveyed to Lanahan and others, their individual and partnership property in trust, for the payment of creditors; that the conveyances although valid on their face, were in fact fraudulent and void as to creditors; that after their execution and before the issuing of the plaintiff's attachment, certain creditors of Rasin and Cooper, on February 13th, 1882, filed petitions in the Court of Common Pleas of Baltimore City, praying to have the said Rasin and Cooper, who composed the firm of R. W. L. Rasin & Co., individually adjudged insolvent debtors; that pending these proceedings and before any adjudication had on the same, Cooper died; that subsequently to wit, on November 15th, 1883, Rasin, the surviving partner, was adjudged an insolvent debtor, and a certain Frank Gosnell, was duly appointed his permanent trustee, and as such gave bond according to law.

The main questions arising upon these facts, are:

*First.* Whether the adjudication of Rasin as an insolvent debtor, vested in Gosnell, his trustee in insolvency, the partnership assets of Rasin & Co., by relation from the time of the filing of the proceedings in insolvency?

And *secondly,* if so, whether the title to such assets thus vested in the trustee, was a bar to the attachment issued subsequently to the filing of the proceedings in insolvency, by the appellant, a citizen of another State?

No one denies that by a series of decisions beginning with *Larrabee vs. Talbott,* 5 *Gill,* 426, it has been decided that as to the claims of non-resident creditors who were not parties to the proceedings, the insolvent law of the State was wholly inoperative and void; and that notwithstanding the transfer by the insolvent of his property to a trustee, such creditors could reduce their claims to judgment, and by issuing attachments thereon, seize any prop-

erty or funds undistributed in the hands of the insolvent trustee.

"The practical injustice of the rule," says Mr. Poe, 2 vol. *Pleading and Practice, sec.* 815, "was obvious. It oftentimes enabled the foreign creditors to obtain payment of their claims in full, while the domestic creditors, against whom the discharge of the insolvent was confessedly complete and effectual, received nothing whatever."

Such a construction of a statute, which dedicated the entire estate of the insolvent to the payment of his creditors, and which declared in express terms, that it should be distributed among them, according to the principles of equity, cannot be supported, it must be admitted, upon any principle of abstract justice, nor upon any principle of comity or international law.

It rested, and rested solely, upon a series of decisions, in which the power of a State to pass insolvent laws, discharging the person of the debtor and his future acquisitions of property from the payment of his debts, and the effect and operation of such laws upon the rights of *resident* creditors, and creditors citizens of other States, had been considered and decided by the Supreme Court of the United States. *Sturges vs. Crowninshield,* 4 *Wheat.,* 122; *Ogden vs. Saunders,* 12 *Wheat.,* 213; *Boyle vs. Zacharie,* 6 *Peters,* 635; *Cook vs. Moffat,* 5 *Howard,* 295.

From the conflicting opinions filed in these cases, and the widely different reasons on which they are based, it may not be easy, especially in *Ogden vs. Saunders,* to say precisely what was decided by the majority of the Court. Without extending this opinion by a review of these cases, it is sufficient to say, that the following constitutional principles may be considered as definitely settled:—

1. That a State may pass an insolvent law, discharging the person of the debtor and his future acquisitions of property from the payment of his debts, so far as it con-

cerns contracts between citizens of the State, made within the State, after the enactment of such laws.

2dly. That such laws, do not apply to contracts between citizens of one State and citizens of another State.

Passing by the earlier cases in which these questions were considered, and coming down to *Cook vs. Moffat, et al.*, 5 *How.*, 295, in which it was decided that the discharge of a Maryland debtor under the insolvent laws of that State, did not affect a contract made in New York, with a citizen of that State, although the contract was made after the passage of the insolvent law. Mr. Justice GRIER, in delivering the opinion of the Court, said:

"It is true, that as between the several States of this Union, their respective bankrupt laws, like those of foreign States, can have no effect in any forum beyond their respective limits, unless by comity. But it is not a necessary consequence, that State Courts can treat this subject as if the States were wholly foreign to each other, and inflict her bankrupt laws on contracts and persons not within her limits."

And then after referring to *Sturges vs. Crowninshield*, in which it was held that a State had the power to pass insolvent laws, provided they did not impair the obligation of a contract, within the meaning of the Constitution of the United States, he says, "It followed, as a corollary from this modification and restraint of the power of the State to pass such laws, that they could have no effect on contracts made before their enactment, or beyond their territory."

This case was decided in 1847, and in the same year, *Larrabee vs. Talbott,* was argued in the Court of Appeals of this State, involving the validity of a transfer of property by a Maryland debtor in failing circumstances, and who afterwards became insolvent, to a New York creditor, in plain violation of the insolvent law of Maryland. In sustaining the validity of the transfer, Judge MARTIN said:

"We have then before us a contract made and to be performed in New York, between citizens of Maryland and citizens of New York, and it is now settled by the adjudications of the Supreme Court, that the discharge obtained by Rogers & Frick under the insolvent laws of Maryland, could not affect the right of Berrien & Co. to obtain against them in the Maryland Courts, an absolute and unqualified judgment, and to place their execution upon any property of the insolvent debtors, to be found undistributed in the hands of their trustee."

In support of these views, Judge MARTIN relies mainly on the decision of *Cook vs. Moffat,* and says:

"We have quoted largely from the opinion of the learned Judge in this case, because it contains the views of a Court whose decisions upon all questions of constitutional law, are to be received as conclusive."

It is clear then that the decision in *Larrabee vs. Talbott,* was based *solely* upon what the Court of Appeals understood to be the decision of the Supreme Court as to the effect and operation of the insolvent law of this State, between a citizen of this State and a citizen of another State. However broad may be the language used by Mr. Justice GRIER, and it must be admitted to be very broad, yet the Supreme Court had not in terms decided, that a foreign creditor could come into this State, and obtain judgment against an insolvent debtor, and seize by execution the property conveyed to the trustee.

In the later case of *Crapo vs. Kelly,* 16 *Wallace,* 610, this question has been considered and determined by that Court.

In that case the insolvent debtor, a citizen of Massachusetts, was at the time of his application for the benefit of the insolvent laws of that State, the owner of a ship then on the high seas. Shortly after the execution of the deed transferring his property to the trustee in insolvency, the ship arrived at the port of New York, and while there

was seized under an attachment issued at the instance of a New York creditor, and was sold. The right of the attaching creditor as against the trustee of the insolvent debtor was sustained by the Court of Appeals of New York, 45 *N. Y.*, 85, but on appeal to the Supreme Court of the United States, this decision was reversed, and that Court held, that the title to the ship, passed under the insolvent laws of Massachusetts to the trustee, and the title being in the trustee, she was not liable to seizure and sale by the New York creditor.

"If the title passed to the insolvent assignees," says Mr. Justice HUNT, in delivering the opinion of the Court, "it passed *eo instanti* the assignment was executed. The return of the vessel afterwards to America, her arrival in the port of New York, her seizure and sale there did not operate to divest a title already complete."

The concurring opinion of Mr. Justice CLIFFORD, is even more emphatic; "it is quite clear" he says, "that the effect of the assignment, when duly executed by the Court of insolvency, as there regarded, was to vest in the assignees the one undivided half of the ship which previously belonged to the insolvent debtors, and the settled law of this Court is that in such a case every other Court in the United States, whether State or Federal, in which such a proceeding comes under revision, is bound to give it the same effect it would receive in the Courts of that State."

We have no hesitation in accepting this decision as a just and sound construction as to the effect and operation of the assignment of a debtor's property to a trustee in insolvency; and being a decision by the Supreme Court upon a question, if not, strictly speaking, a Federal one, yet one in regard to which the Federal and State Courts alike exercise jurisdiction, it is of the utmost importance that there should be a concurrence of opinion between the Federal and State Courts in regard to the question. *Larrabee vs. Talbott* was decided solely upon what was

supposed to be the views of the Supreme Court, as to the
effect of the insolvent laws of a State upon the rights of
non-residents, and although the doctrine established by
that case always seemed to us a great hardship as to the
home creditors, yet we did not feel at liberty to reverse a
judgment so deliberately rendered by our predecessors;
but the Supreme Court having now decided otherwise,
there can be no reason for adhering to a decision, the
effect of which was to enable the foreign creditor, to come
into the Courts of this State and appropriate the estate
of the insolvent, to the payment of his claim to the entire
exclusion of the home creditors whose hands were tied,
and who were obliged to accept their *pro rata* distribution
of the insolvent estate.

Assuming then, that the adjudication of Rasin, the
surviving partner as an insolvent debtor, transferred to
his trustee, the partnership assets of Rasin & Co., we
agree with the learned Judge, in the able opinion filed by
him in the Court below, that this transfer is binding on
the appellant, although he is a non-resident creditor, and
that the property thereby transferred is not subject to
attachment either in the hands of the trustee or in the
hands of the appellee Lanahan as garnishee.

And this brings us to the question, whether the adjudi-
cation of Rasin as an insolvent debtor, vested in his trus-
tee, the partnership assets of Rasin & Co.?

On the part of the appellees, it is insisted, that the
permanent trustee of Rasin, represents the entire part-
nership estate of the insolvent firm, that his title to the
whole assets of the firm went back from the moment of
his appointment and qualification, to the date of the peti-
tions in insolvency, excluding all intermediate liens, and
superseding of course the appellant's attachment.

The appellant on the other hand contends, that the
partnership assets of Rasin & Co., did not pass to the
trustee of Rasin, because prior to the filing of the pro-

ceedings in insolvency, Rasin and Cooper conveyed to Lanahan and others, the entire partnership property in trust, for the benefit of creditors, that these conveyances operated as a dissolution of the firm;—that though void as to creditors, they are binding on the grantors, and that Lanahan and Dobbin, the assignees, thereby became tenants in common of the partnership property. If this be so, then it would follow, that if both Rasin and Cooper had been individually adjudged insolvent debtors, the assignees under the fraudulent conveyances would have been entitled to the partnership assets as against the trustee appointed by the insolvent Court. The whole argument is founded upon a mistaken view as to the operation and effect of these conveyances as against creditors.

Although fraudulent, they are, it is true, binding on the grantors, because the law for obvious reasons of public policy will not permit a fraudulent grantor, to take advantage of his own fraud. But we are not dealing with a controversy in regard to the rights of the grantor and grantee under a fraudulent assignment. The question here is, what is the effect of such an assignment as against the creditors of the grantors? And as to them it is well settled that the assignment is absolutely null and void, If so, although the conveyances were binding on Rasin and Cooper, the grantors, and as between them operated as a dissolution of the partnership, yet such a dissolntion, could in no manner prejudice the rights of their creditors. As to them, the partnership assets, still remained in the hands of the firm, just as if the conveyances had not in fact been executed. Once concede that a fraudulent conveyance is void as to creditors—mere waste paper, and it necessarily follows, that their rights can in no manner be prejudiced thereby.

But admitting this to be so, it is further argued, that the partnership assets did not vest in the insolvent trustee, because the insolvent law of this State, does not provide

for proceedings in insolvency against a partnership, and further because, the insolvent Court, had no jurisdiction to administer partnership assets. There is no provision in the insolvent law, it is true, for the institution of proceedings against a partnership as such, but it was expressly decided in *Armstrong, Cator & Co. vs. Martin & Marr,* 57 *Md.,* 397, that *separate proceedings* in insolvency may be instituted against the individual members of a firm; and "if all the parties are declared insolvent, there is no greater difficulty," say the Court, "in settling the affairs of the partnership, than there has been under our insolvent laws, where members of partnerships have applied for the benefit of the insolvent law, and their interests in the partnership assets have passed into the hands of trustees."

It would be the duty of the auditor of course to state separate accounts, and to make separate distributions between the individual and partnership creditors, but, apart from this, there would be no more difficulty in the settlement of partnership assets in the insolvent Court, than ordinarily occurs in the settlement of such assets in a Court of equity.

But these objections out of the way, we come to the question as to the effect of Cooper's death, pending the proceedings in insolvency. And having died without being adjudicated an insolvent debtor, it is argued, that he is to be considered as a solvent partner, and solvent too by *relation* to the time of filing the proceedings in insolvency, and being thus a solvent partner he was entitled to the administration of the partnership assets. And then it is said, that the attachment having issued before the filing of the insolvent proceedings, it thereby became a lien on the partnership property, thus in the hands of Cooper the solvent partner. Now if Cooper had been adjudicated a solvent partner, and was alive, the settlement of the partnership assets would have unquestion-

ably devolved upon him. But having died before an adjudication was had on the question of solvency, we do not understand precisely how the partnership is to be settled by or through him, and this somewhat curious application of the doctrine of relation seems to us to be more fanciful than sound.

His death before an adjudication, cannot be considered as an adjudication that he was a solvent partner; on the contrary, the proceedings in insolvency were filed by the creditors of Rasin & Co., against Rasin and Cooper, individually, and filed on the ground that the partnership was in fact insolvent; and Rasin, the surviving partner, was adjudged insolvent on the ground of the failure on the part of the firm to resume payment of its commercial paper. It was substantially an adjudication of the *insolvency of the partnership*, through *separate proceedings against the individual members of the firm.* But, be this as it may, Rasin, upon Cooper's death, was entitled by right of survivorship to the settlement of the assets of the firm, and but for the subsequent adjudication against him as an insolvent debtor, it would have been his duty to have administered the same for the benefit of creditors. When he was adjudicated insolvent on proceedings filed by the creditors of the partnership against Cooper and Rasin, who alone composed the firm, and on the ground that the partnership was insolvent, the duty of administering and settling the partnership property for the benefit of creditors, necessarily devolved upon the permanent trustee of Rasin.

No objection is made in the brief of the appellant, to the intervention of Gosnell, the permanent trustee. If the conveyances to Lanahan and others were fraudulent, as set forth in the replication of the appellant, the partnership assets thereby conveyed belonged in fact to the trustee of Rasin, the surviving partner, and it was his duty to have intervened and to have objected to a

judgment of condemnation of such property in the hands of the appellee or any other person. And although the judgment on the demurrer filed by the appellee to the replications of the appellant, does not settle the title to the partnership property, as between *the grantees* under the deeds alleged to be fraudulent, and *the permanent trustee of Rasin,* yet if the property in the hands of the appellee was not liable to attachment, the Court in sustaining the demurrer, did right in quashing the attachment, and this too, whether the motion was made by the appellee Lanahan, or by Gosnell the trustee.

For these reasons, the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 19th June, 1884.)