244

ISAAC SILVER & BROTHERS CO. INC. *v.* KALMON *et al.*
IRVING TRUST CO., *et al.*, receivers, *v.* KALMON *et al.*

Nos. 9070, 9071.   JULY 14, 1932.   REHEARING DENIED AUGUST 12, 1932.

248

*Bennet & Peacock* and *Jones, Jones, Johnston & Russell,* for plaintiffs in error.

*Pottle, Farkas & Cobb,* contra.

GILBERT, J. The Civil Code (1910), § 5477, declares: "The power of appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." "The appointment of a receiver is a harsh remedy to which resort should not be had, except when the interests of creditors are exposed to manifest peril. It has been said that 'The high prerogative of taking property out of the hands of one, and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong imminently impending.' *Crawford* v. *Ross,* 39 *Ga.* 49. It has been further said that 'The appointment of a receiver is recognized as one of the harshest remedies which the law provides for the enforcement of rights, and is allowable only in extreme cases, and under circumstances where the interest of creditors is exposed to manifest peril.' *Dozier* v. *Logan,* 101 *Ga.* 173 (2), 179 (28 S. E. 612)." *Dixon* v. *Tucker,* 167 *Ga.* 783 (146 S. E. 736). The Code further provides, § 5495: "Creditors without lien can not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." There are exceptions to the general rules stated above. For instance, in § 5479 it is provided: "A court of equity may appoint a receiver to take possession of, and hold subject to the direction of the court, any assets charged with the payment of debts, where there is manifest danger of loss or destruction, or material injury to those interested."

In the present case plaintiffs have no lien of any character. No fraud is alleged. It is true that the petition alleges that "petitioners are . . advised that ever since the appointment of the New York receivers, or shortly before such appointment, all deposits by said local chain-store and the persons in charge thereof, were withdrawn from local banks, and are being forwarded beyond the State of Georgia as rapidly as the same are collected, and petitioners are advised that these funds are immediately wired beyond the State of Georgia and the reach of process of its courts, from day to day, as the same are collected." This allegation is somewhat indefinite as to the disposition of cash receipts. Giving

the allegation a reasonable construction, it must be assumed that the pleader intended to say that the cash receipts were telegraphed each day to the receivers duly and legally appointed by the Federal district court in the State of New York. It is impossible to construe this as an allegation of fraud. It is also impossible to construe the allegation as meaning that there is a manifest danger of loss or destruction or material injury to those interested. The Federal court in New York having appointed receivers to take full charge of all the stores of the defendant company in all of the States, including the store in Albany, Ga., it must be assumed that remittances from the store in Albany to such receivers was in pursuance of the law and made in due course of business to the properly constituted authorities to receive such funds. The receivers are officers of the court, and the payment of cash to receivers is in law a payment into the hands of the court. It would be shocking to hold that payment into the hands of the Federal court, although the particular district court having jurisdiction is in another State, would constitute fraud against petitioners.

It is not alleged that petitioners are without an adequate remedy at law. In fact it seems certain that had petitioners moved prior to the appointment of the receivers in New York, the remedy of attachment would have been available under the Civil Code (1910), § 5055. "All extraordinary remedies of equity may be enforced by attachments." § 5474. "Where property has been placed in the hands of a receiver, all persons properly seeking to assert equitable remedies against these assets should become parties to the cause by intervention and prosecute their remedies therein." § 5478. Since it appears that receivers were duly appointed by the Federal court in the State of New York and that the Federal court for the Middle District of Georgia has duly and regularly appointed the same receivers in an ancillary proceeding to take charge of all stores and property of the defendants in the Middle District of Georgia, the same including the Albany store, it would appear to have been the legal right of the plaintiffs to avail themselves of the privilege afforded in the Code section just cited, by becoming parties to the cause by intervention in the ancillary proceeding pending in the Federal court of the Middle District of Georgia. Preferring to invoke the powers of the State court, petitioners could, assuming the facts authorized equitable interven-

tion, have framed their petition to the superior court as a proceeding ancillary to the Federal case, so that the State court could appoint the same receivers already appointed by the Federal court. No reason appears why a State court can not entertain a proceeding ancillary to one in a Federal court. "The State court is of coordinate jurisdiction in such matters with the Federal court sitting in the same locality. As between the parties, its determination of the solvency of the corporation and of the need for a receiver is just as conclusive as if had in a Federal court. The need for a uniform administration of the assets of an insolvent incorporation inheres in the principles of equity, and does not vary with the forum first invoked. It is no unusual thing for a Federal court to appoint an ancillary receiver of assets within its jurisdiction in aid of a primary appointment by a State court of another State. Sands v. E. S. Greeley & Co., 31 C. C. A. 424, 88 Fed. 130." Shinney v. North American Savings, Loan & Building Co., 97 Fed. 11. This State proceeding is not ancillary or auxiliary. It is antagonistic. Should they have preferred otherwise, they could have availed themselves of their remedy of attachment.

In the brief of defendant in error our attention is directed to 23 Ruling Case Law, 25, § 18, as follows: "The courts of one State may, at the instance of resident or domestic creditors, or even at the instance of a non-resident creditor, appoint a receiver for a foreign corporation doing business in the State and having property therein, notwithstanding the appointment of a receiver at the domicil of the corporation, where the general requisites for a receivership are shown, as in other cases. Thus when the officers of a foreign corporation are recklessly and extravagantly managing its affairs, involving it in debt, and converting its property to their own use, and the board of directors, though requested, refuse to interfere, the interposition of a court of equity and the appointment of a receiver are proper." This statement is based upon the ruling in Holbrook v. Ford, 153 Ill. 633 (39 N. E. 1091, 46 Am. St. R. 917, 27 L. R. A. 324). It appears, however, even under the general principle stated in the above-quoted excerpt, that the appointment of a receiver under the conditions named is dependent upon the existence of "the general requisites for a receivership." The case of Holbrook v. Ford is not binding upon this court. However, it appears to be a well written and sound ruling in which there

is no conflict with what is here ruled. In that case it is held that under facts similar to the facts of this case an attachment would be an appropriate remedy. We are fully in sympathy with the generally accepted rule that, where the controversy is between a foreign receiver, assignee, or trustee, and a creditor who resides in the State where the proceeding is instituted, the courts of the latter State will protect its own citizen. The theory as stated in Holbrook v. Ford, supra, is: "This doctrine proceeds upon the ground that such an official, appointed under the laws of one State, has no extraterritorial right of action except as a matter of comity, and that, as against its own citizens, no State will extend its comity to a receiver, assignee, or trustee appointed under the laws of another State." The principle, however, has no application in a proceeding such as this, where the extraordinary power of equity is sought in the appointment by a State court of a receiver, without alleging or showing any of the requisites provided under our Code for the appointment of a receiver, or that the case falls within the exceptions to the general rule, and where it appears that receivers have already been appointed by the Federal court of another State to take charge of the specific property sought to be placed in the hands of a receiver appointed by the State court, and also where it appears that the Federal court in this State having jurisdiction, in an auxiliary or ancillary proceeding, has appointed the same receivers appointed in the original case instituted in the Federal court in New York. It appears that Silver & Brothers Company Inc. operates 47 stores in 17 States. The confusion which might arise in the winding up of this business, were it possible to appoint separate State court receivers in every locality where a store or stores are located, would seem to illustrate the inadvisability of such a course.

Counsel for the Georgia creditors seeking the appointment of the Georgia receiver, in their brief, state: "It may be that the Georgia creditors, if they had all known of the New York proceeding and could have acted in time, could have protected themselves by attachment against this non-resident debtor. . . It does not lie in the mouth of plaintiff in error [Silver & Bros. Co.] to urge this objection, when it consented to the appointment, by the court of New York, of receivers, at the instance of unsecured creditors. It is no concern of this plaintiff in error, whether the defendants in error pursued the proper remedy or not. This and kindred questions are

matters solely between Georgia courts and these Georgia creditors, on the one side, and the foreign receivers on the other. We insist that the plaintiff in error can not have its cake in Georgia, after having eaten it in New York." We can not see the logic of this position. Whatever may be the requirements for the appointment of a receiver in New York, it is an existing fact that receivers have been appointed in the present case, and, so far as disclosed, that judgment is valid and binding. The fact that Silver & Bros. Co. acquiesced or consented in the appointment of such receivers is no reason why they or the creditors who obtained the appointment of the receivers in New York can not object to other and additional receivers, not ancillary to the New York receivership, being appointed in another State by a State court. The debtor, though acquiescing in the appointment of a receiver to take charge of his property, is not estopped from insisting that the receivers so duly and legally appointed should be permitted to work out the problems committed to them in their appointment, without the confusion and added expense of having an additional appointment of other receivers, thus entailing more receivership costs and divided authority between the State and Federal courts. The consent by Silver & Bros. Co. Inc. to the appointment of receivers in New York would estop them from objecting to the appointment in auxiliary or ancillary proceedings of the same receivers already appointed in the main case. This is shown by the authorities cited by counsel for the Georgia creditors. Walker v. United States Light & Heating Co., 220 Fed. 393, and cit.; Brooks v. Smith, 290 Fed. 33. Note that the receivers so appointed in another court must be auxiliary or ancillary receivers, not different receivers answerable wholly to a different court, proceeding independently of the main case.

Another case, Sands v. Greeley & Co., 88 Fed. 130 [31 C. C. A. 424], liberally quoted by counsel, so well states the principles involved that we likewise liberally quote therefrom. It was there contended "that the Connecticut receivers have no title or power to collect the assets of the corporation outside of that State, and that in the State of New York the assets are primarily subject to the claims of its citizens, and will not be surrendered until they are satisfied. There are expressions in the text-books which sanction this contention. Thus, it is stated in Beach on Receivers (section 254) that 'a foreign receiver will not be permitted, as against the

claims of creditors resident in another State, to remove from that State the assets of the debtor, it being the policy of every sovereignty to retain in its own hands the property of the debtor until the claims of its citizens have been satisfied.' Similar expressions may be found in some of the opinions of the courts, but an examination of the adjudications will show that the broad proposition has never been ruled, and what has been actually decided is that, when a foreign receiver is obliged to invoke the aid of the court of another State in asserting his title to assets within its jurisdiction, such court will not, in the exercise of comity, recognize his title to the prejudice of the citizens of its own State, *who have fairly acquired title to the assets, either by purchase, attachment, or other legal process, or whose claims are entitled to priority as equitable liens.* [Italics ours.] Patterson *v.* Lynde, 112 Ill. 207; Hoyt *v.* Thompson's Ex'r, 19 N. Y. 207; Willitts *v.* Waite, 25 N. Y. 577; In re Waite, 99 N. Y. 433, 12 N. E. 440; Kidder *v.* Tufts, 48 N. H. 121; Paine *v.* Lester, 44 Conn. 196 [26 Am. R. 442]; Fawcett *v.* Supreme Council [64 Conn. 170], 29 Atl. 614 [24 L. R. A. 815]; Eddy *v.* Winchester, 60 N. H. 63; Askew *v.* Bank, 83 Mo. 366; Pinckney *v.* Lanaham, 62 Md. 447; Insurance Co. *v.* Wright, 55 Vt. 526; Baldwin *v.* Hosmer 101 Mich. 119, 59 N. W. 432; Hunt *v.* Insurance Co., 55 Me. 290 [92 Am. D. 592]; Taylor *v.* Insurance Co., 96 Mass. 353; Bagby *v.* Railroad, 86 Pa. St. 291. A receiver appointed in one State for an insolvent corporation has no title as such to property located in another State, and not actually in his possession. Whart. Confl. Laws, § 390. This is because he is appointed by a court which derives its jurisdiction from State laws which have ex proprio vigore no extraterritorial force, and the effect of which in other States depends wholly on the comity of the State in which their application is invoked. But by the comity extended by the several States of the Union to one another, not only from motives of respect but from considerations of mutual convenience, the right of a receiver to possess himself of assets located in a State other than that of his appointment is everywhere recognized and enforced, subject to the qualification mentioned. When property in another State has actually been reduced to his possession, he can stand upon his possessory title, and defend his rights against all others who can not prove a better title. It is only when he is compelled to resort to the courts to obtain possession of assets that he

must rely upon that principle of comity upon which alone his title rests. When the administration extends over assets located in several jurisdictions, it is often convenient to apply, in advance, for the assistance of the different courts; hence the practice has become common of applying for auxiliary or ancillary appointments. When such an application is made, the court to which it is addressed exercises its own original jurisdiction.

"The decree in the court of the domicile of the corporation is evidence in every other State that the corporation is insolvent, and that a proper case exists in that State for the appointment of a receiver, and it is to be respected accordingly, in obedience to the constitutional provision whereby full faith and credit is to be given in each State to the records and judicial proceedings of every other State of the Union. But it is for the court to which the application is made to decide what remedy it should extend in the particular case, and whether the proper administration of the assets requires the appointment of a receiver. Ordinarily, in comity to the proceeding of another court of co-ordinate jurisdiction, it will appoint an ancillary receiver, and assume administration in aid of the primary receiver. Trust Co. *v.* Miller, 33 N. J. Eq. 155. When it appoints a receiver, the officer becomes its officer, and is completely amenable to its control, and it matters not whether he is called an ancillary receiver or merely a receiver. His title to the assets within the jurisdiction is derived from its decree, and does not depend upon comity. The assets are in its custody, and are to be disposed of as equity and the orderly administration of justice require. Its judgments and decrees in respect to these assets must be accepted as conclusive by all other courts. 'Where a receiver, administrator, or other custodian of an estate is appointed by the courts of one State, the courts of that State reserve to themselves full and exclusive jurisdiction over the assets of the estate, within the limits of the State.' Reynolds *v.* Stockton, 140 U. S. 254, 11 Sup. Ct. 773 [35 L. ed. 464]. It rests in the discretion of the court appointing the receiver whether the assets within its jurisdiction shall be distributed under its own direction or shall be transmitted to the primary receiver. U. S. *v.* Coxe, 18 How. 105 [15 L. ed. 299]. It is eminently proper that claimants residing within its jurisdicton should be relieved from the expense and inconvenience of proving their claims in other jurisdictions, and that pro-

vision should be made for securing to them equality of distribution in respect to the whole assets of the corporation; but there is no hard and fast rule to control the discretion of the court in making such distribution of the assets as shall be just to all creditors, and ultimately effect a ratable distribution of all the property of the corporation. Buswell v. Supreme Sitting [161 Mass. 224], 36 N. E. 1065 [23 Am. St. R. 846]; Baldwin v. Hosmer (Mich.) 59 N. W. 432 [supra]. Courts of justice make no distinction between foreign and domestic creditors when their claims are of equal validity. After the appointment of the ancillary receivers, all the creditors of the insolvent corporation who had acquired some priority of lien upon its assets were upon an equal footing. None had previously acquired any, and, under the remedies given by the laws of the State, the domestic creditors could not have secured priority upon the assets in that State over the foreign creditors. Bank v. Lacombe, 84 N. Y. 367 [38 Am. R. 518]."

It is important to note the lines italicized by us in the above quotation, to wit: "who have fairly acquired title to the assets, either by purchase, attachment, or other legal process, or whose claims are entitled to priority as equitable liens." It also must be borne in mind that receivers were first appointed in New York, and they were authorized to take charge of all of the stores in all of the States. It is a reasonable construction of the pleadings that in pursuance of such appointment those in charge of the Albany store acknowledged the binding force upon them of such appointment, and were making reports and remittances of cash to such receivers. All of these were established facts at the time the Georgia petition was filed in the superior court. The reasons already stated seem sufficient to compel the ruling that the petition in the State court did not set out a cause of action for a receiver, and it follows that the allowance of the amendment was erroneous. The court erred in refusing to revoke the order of appointment on due application made. There is another and conclusive reason, however, and that is the spirit of comity which is proper and essential as between State and Federal courts. The Federal court first acquired jurisdition and had already appointed receivers who had taken charge of all the property of the defendants. It would appear to be unseemly upon the part of the State court to undertake to withdraw from the jurisdiction and control of the Federal court

any separate unit or units of the business of the defendants, to be handled by separate appointees of separate courts. The conflicts and expenses of such a proceeding afford ample reason for denying the right of the State court to interfere. All decisions of this court, cited in briefs filed by all parties, have been examined and found to be in accord with the rulings here made. To discuss all of them would unduly extend this already lengthy opinion.

The judgments in both cases are therefore

*Reversed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

Russell, C. J. I dissent because the stock of goods involved in this case is within this jurisdiction. The suit in the superior court of Dougherty County was filed prior to the ancillary petition in the Middle District Federal court. No comity requires either of these courts to yield precedence to the other, except a prior proceeding entitles the one which first proceeds to precedence. An attachment against the stock of goods might have been sworn out on the ground of non-residence, but equity provides a far more available remedy for achieving the real value of the assets upon which depends the claims of the resident creditors within this State.